Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 10, 2002      Decided February 7, 2003

No. 01-5395

JOHN DOE,
APPELLANT

v.

UNITED STATES POSTAL SERVICE AND
UNITED STATES OF AMERICA,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 00cv01398)

———

*Dale Edwin Sanders* argued the cause for appellant. With him on the briefs was *Patricia A. Smith*.

*Daniel Bruner* was on the brief for *amicus curiae* Whitman–Walker Clinic Legal Services Program in support of appellant.

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Sherri Evans Harris*, Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GINSBURG, *Chief Judge*, and SENTELLE and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: An HIV-positive postal worker who first revealed his medical condition to Postal Service officials as part of a request for leave pursuant to the Family and Medical Leave Act alleges that one of those officials disclosed his HIV status to his co-workers in violation of both the Privacy Act and the Rehabilitation Act. The district court granted summary judgment in favor of the Postal Service on both claims. Because we conclude that appellant has raised a genuine issue of material fact as to whether Postal Service officials disclosed information retrieved from his leave request form, and that the form constitutes an employer "inquiry" subject to the Rehabilitation Act's confidentiality requirement, we reverse.

I.

This case concerns the interaction between three statutory schemes. The Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.*, entitles eligible employees, including certain federal government employees, to take up to twelve weeks of unpaid leave per year for medical and other specified reasons. *Id.* §§ 2611(2), 2612(a)(1). The Privacy Act of 1974, 5 U.S.C. § 552a, generally forbids federal agencies from "disclos[ing] any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." *Id.* § 552a(b). Finally, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, which generally prohibits federal government employers from discriminating on the basis of disability, also forbids such em-

ployers from disclosing employees' private medical records, incorporating by reference the medical examination confidentiality provision of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(d). *See* 29 U.S.C. §§ 791(g), 794(d). That provision is more specific than the Privacy Act. A general prohibition on employer inquiries into employees' medical conditions, it contains two exceptions: one for "voluntary medical examinations ... which are part of an employee health program available to employees at that work site," and another for "inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). Medical information obtained under either exception must be treated as a confidential record. *Id.* § 12112(d)(4)(C).

These three statutes converged when John Doe, a maintenance worker at the United States Postal Service's Brentwood facility in Washington, D.C., missed several weeks of work in March and April 1998 while suffering from an AIDS-related illness. In late April, Doe's direct supervisor, Patricia Downs, sent him a letter about his extended absence. The letter instructed Doe to complete and submit, within five calendar days, a Postal Service administrative form and a medical certificate "provid[ing] an explanation of the nature of [the] illness." If he failed to submit these forms, the letter warned, he would face potential disciplinary action for being absent without leave. The letter also stated:

> Your condition may qualify you to be covered by the Family and Medical Leave Policies. Also[ ] included for your convenience are[ ] Department of Labor Form WH 380 (Certification of Health Care Provider) and PS Form 3971 [the Postal Service administrative form], in the event that you believe your absence qualifies you under the Family and Medical Leave Act. You must still contact me within five (5) calendar days advising me of the status of your absence.

Faced with these options, Doe chose to complete Department of Labor Form WH 380, the FMLA medical certification form. One portion of that form requires the employee's

health care provider to certify that the employee suffers from a "serious health condition" and to "[d]escribe the medical facts which support [the] certification." 29 C.F.R. pt. 825 app. B. Responding to these questions, Doe's physician stated that Doe had "AIDS related complex" and "chronic HIV infection." Although Postal Service employees usually submit such forms to their direct supervisors, Doe, having never told anyone at the Postal Service about his HIV status, was hesitant to reveal this sensitive information to Downs. On her recommendation, he instead submitted the form to Postal Service administrative assistant Paul Neff. For reasons not relevant here, the Postal Service ultimately denied Doe's FMLA request.

When Doe returned to work, he discovered that his HIV status had become common knowledge among his co-workers, many of whom commented to him about it. Several identified Doe's management-level supervisor, Melvin Tahir, as the source of the information.

Relying on the ADA's medical confidentiality provision, Doe filed a Rehabilitation Act complaint with the Equal Employment Opportunity Commission, which commenced an investigation. When the statute of limitations began to run out on his Privacy Act claim, Doe withdrew his EEO complaint and filed suit in the United States District Court for the District of Columbia, alleging that Postal Service officials disclosed medical information contained in his FMLA certification form in violation of both the Privacy Act and the Rehabilitation Act. The district court granted the Postal Service's motion for summary judgment on both claims, concluding that (1) Doe had failed to raise a genuine issue of material fact as to whether a Postal Service employee had improperly disclosed information that had been retrieved from his medical records in violation of the Privacy Act, and (2) the FMLA form was not an employer inquiry subject to the ADA's medical confidentiality requirement. *Doe v. United States Postal Serv.*, No. 00–1398, mem. op. at 24–25, 29–31 (D.D.C. Sept. 10, 2001). Doe appeals. Our review is de novo. *See Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998).

## II.

We start with Doe's Privacy Act claim. Enacted to "safeguard[ ] the public from unwarranted . . . dissemination of personal information contained in agency records," the Privacy Act generally prohibits "nonconsensual disclosure of any information that has been retrieved from a protected record," unless that information falls into one of a number of statutory exceptions, none of which applies here. *Bartel v. FAA*, 725 F.2d 1403, 1407, 1408 (D.C. Cir. 1984). The Postal Service does not dispute that Doe's FMLA certification form was contained in an agency record subject to the Privacy Act's confidentiality requirements, nor does it argue that the information on the form qualifies for one of the statutory exceptions. It claims only that Doe has offered insufficient evidence that a Postal Service employee (1) disclosed information about Doe's medical condition that (2) the employee had retrieved from Doe's FMLA certification form. In considering this argument, we keep in mind that summary judgment may not be granted if the record reveals a genuine issue of material fact—that is, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* at 255.

Applying this standard, we think Doe produced enough evidence of disclosure to survive summary judgment. As to the first disputed element of the Privacy Act cause of action—that a Postal Service official disclosed confidential medical information—Doe points to record evidence indicating that his management-level supervisor, Melvin Tahir, told coworkers about his HIV status. Specifically, one of Doe's coworkers testified at his deposition that he first learned of Doe's HIV status from an acting supervisor, who in turn identified his source as Melvin Tahir. Three other coworkers said either that Tahir had told them directly about Doe's HIV status or that they overheard Tahir telling others of it.

To be sure, the record contains conflicting accounts of Tahir's role in spreading the news of Doe's HIV status. Most important, Tahir denies having told anyone about Doe's condition, claiming he knew nothing about it until he was scheduled to answer Doe's EEO complaint. Pointing to this and other conflicts in the evidence, the district court quite properly declined to rest its grant of summary judgment for the Postal Service on this ground. *Doe*, mem. op. at 28–29. Instead, the district court granted summary judgment on the second disputed element of the Privacy Act cause of action—that Doe provided no evidence "that gives rise to a reasonable inference that USPS supervisors became aware of Plaintiff's condition through his FMLA form," as opposed to some other source, or even simple speculation. *Id.* at 27, 29–31. On this point, we disagree.

As we view the record, Doe offered two pieces of evidence from which a reasonable jury could conclude that a Postal Service employee retrieved information about his HIV status from protected medical records. First, Doe's co-workers' deposition testimony indicates that the disclosures occurred *after* Doe submitted his FMLA form. As Doe points out, this circumstantial evidence suggests that Tahir got the information from the form. Second, deposition testimony indicates that in the normal course of business, Tahir obtained and reviewed leave requests. Not only did former acting supervisor Eddie Lowe testify that Tahir was in charge of handling FMLA requests, but Tahir's boss, Thomas Duchesne, stated in his EEO affidavit that the maintenance department forwarded such medical documentation to the employee's manager or supervisor "as necessary."

As the Postal Service points out, a second Duchesne declaration, attached to its reply brief in support of summary judgment, indicates that the procedure Eddie Lowe described may have changed in September 1997, when Duchesne brought Paul Neff in "to take over some responsibilities previously assigned to Mr. Tahir," including tracking and processing FMLA requests. Although this change occurred well before Doe submitted his form, Duchesne's first affidavit indicates that at least as late as the EEO investigation of

Doe's complaint, FMLA forms were still shared with managers and supervisors such as Tahir. These two statements do not necessarily contradict one another, for it seems perfectly possible that medical leave information continued to be shared with relevant managers and supervisors even after Paul Neff assumed responsibility for tracking and processing the requests. In any event, whatever conflict may exist must be resolved at trial, where Doe will have an opportunity to question Duchesne about his two statements. *See Rogers Corp. v. EPA*, 275 F.3d 1096, 1103 (D.C. Cir. 2002) ("Summary judgment is inappropriate when contradictory inferences may be drawn from the evidence."); *cf. Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806–07 (1999) (a nonmoving party cannot defeat summary judgment by submitting, without explanation, an affidavit contradicting a prior sworn statement).

According to the Postal Service, this course of business evidence is irrelevant in light of Paul Neff's testimony that in this particular case, he put Doe's FMLA form in a locked file cabinet and never shared the form's contents with anyone. But Neff's testimony also established that Tahir had other ways of obtaining the information, such as retrieving the file cabinet keys from Neff's unlocked desk. Quite apart from these concessions, moreover, the course of business evidence, along with the evidence of the timing of the disclosures of Doe's condition, create a sufficient basis for a jury to discredit Neff's testimony and conclude that Tahir did in fact retrieve Doe's FMLA form from the file.

True, Doe's evidence of retrieval is purely circumstantial, but we generally draw no distinction between the probative value of direct and circumstantial evidence. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983). Moreover, because plaintiffs can rarely produce direct evidence that the government has disclosed confidential information obtained from their private records, requiring such evidence would eviscerate the protections of the Privacy Act. *Cf. Teleconnect Co. v. Ensrud*, 55 F.3d 357, 360 (8th Cir. 1995) (rejecting "the notion that only a 'smoking gun' will suffice to defeat a motion for summary judgment in

suits predicated upon asserted disclosures of confidential information").

## III.

Like his Privacy Act claim, Doe's Rehabilitation Act claim rests on his contention that a Postal Service employee improperly disclosed the contents of his FMLA form. The Rehabilitation Act claim, however, requires an additional showing: that the FMLA form amounted to an "inquiry" into Doe's medical condition within the meaning of ADA section 12112(d). 42 U.S.C. § 12112(d). Finding that Doe submitted the form voluntarily and that he therefore failed to make this showing, the district court granted summary judgment for the Postal Service.

Defending the district court's decision here, the Postal Service relies on *Cash v. Smith*, 231 F.3d 1301 (11th Cir. 2000), an FMLA case in which the Eleventh Circuit rejected the plaintiff's confidentiality claim on the ground that section 12112(d) does not govern "voluntary disclosures initiated by the employee." *Id.* at 1307. The Postal Service, however, ignores important factual differences between *Cash* and this case. Though the plaintiff in *Cash* had submitted an FMLA request, her disclosure of her medical diagnosis appears to have had nothing to do with that request. Instead, she told her boss "in confidence" about her diabetes well before she asked for leave and "freely discussed her illness with other . . . employees." *Id.* at 1303–04, 1308. Here, in marked contrast, Doe revealed his medical diagnosis to the Postal Service only after the Service, through his direct supervisor, told him in writing that he would face disciplinary proceedings unless he completed either the FMLA form or a medical certificate explaining "the nature of [his] illness."

Even if Doe can be said to have submitted the FMLA request voluntarily, as the district court found and the Postal Service now insists, that hardly means he volunteered his medical diagnosis. The Postal Service conditioned Doe's receipt of FMLA leave on his submission of supporting medical documentation, as the FMLA authorized it to do.

*See* 29 U.S.C. § 2613(a), (b)(3). It was thus the Postal Service, acting pursuant to this statutory authorization, not Doe, that initiated the inquiry into his medical condition by asking for this medical certification.

It is true, as the Postal Service suggests, that Doe could have avoided disclosing his medical condition by forgoing his statutory entitlement to FMLA leave. If accepted, however, that view would force employees to choose between waiving their right to avoid being publicly identified as having a disability and exercising their statutory rights—including the rights to FMLA leave and to "reasonable accommodations" for their disabilities, *see* 42 U.S.C. § 12112(b)(5)(A)—that may depend on disclosure of their medical conditions. Such a result would run directly counter to Congress's purpose in enacting the ADA, which was, at least in part, to permit employers to inquire into employees' medical conditions in order to provide reasonable accommodations, while avoiding subjecting employees to the "blatant and subtle stigma" that attaches to "being identified as disabled." H.R. REP. No. 101–485, pt. 2, at 75 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 357–58; *see also* 29 C.F.R. pt. 1630 app. (section 12112(d) and accompanying regulations "permit[ ] employers . . . to make inquiries or require medical examinations necessary to the reasonable accommodation process"). Section 12112(d)'s confidentiality requirement balances these two competing interests by ensuring that the information disclosed pursuant to an employer's medical inquiry spreads no farther than necessary to satisfy the legitimate needs of both employer and employee. The Postal Service's theory would destroy that balance, returning employees to the very bind Congress sought to avoid by enacting the confidentiality requirement.

Under the circumstances of this case, we think Doe's submission of the FMLA form was clearly a response to an employer inquiry, and not a voluntary disclosure. According to the Postal Service, however, section 12112(d) is nevertheless inapplicable because the FMLA form falls into neither of the two categories of permissible employer inquiries subject to section 12112(d)'s confidentiality requirement, 42 U.S.C. § 12112(d)(4)(C). Although we agree the FMLA form does

not constitute the first type of section 12112(d)(4)(B) inquiry—it does not seek information in connection with a "voluntary medical examination[ ] . . . which [is] part of an employee health program available to employees at that work site"— the form clearly falls within the second category, "inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). The FMLA provides for medical leave only when the applicant suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA certification form itself requires health care providers to attest that the applicant suffers from a "serious health condition" that has resulted in a period of incapacity and notifies the certifying health care provider that "incapacity," for purposes of the FMLA, means "inability to work." 29 C.F.R. pt. 825 app. B.

The Postal Service contends that the job-related functions language does not apply to Doe's FMLA form because the Postal Service asked for medical certification to ascertain why Doe was absent from work, not to determine whether he was able to perform his job. Whatever the Postal Service's motive in seeking the information, however, it was trying to determine whether Doe was "unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D). Section 12112(d)'s plain language requires the Postal Service to treat Doe's response to that inquiry as confidential.

## IV.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*