In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2848

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant,*

*v.*

THRIVENT FINANCIAL FOR LUTHERANS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:10-cv-853—**William C. Greisbach**, *Chief Judge.*

ARGUED SEPTEMBER 7, 2012—DECIDED NOVEMBER 20, 2012

Before CUDAHY, ROVNER, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* The Equal Employment Opportunity Commission (EEOC) brought suit against Thrivent Financial for Lutherans (Thrivent) on behalf of Gary Messier, alleging a violation of the medical record confidentiality requirements of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.* On July 6, 2006, Omni Resources, Inc. (Omni), a technology consulting

agency, hired Messier to work as a temporary SAS programmer for Thrivent pursuant to an agreement between Omni and Thrivent. After Messier left Omni and Thrivent on December 4, 2006, Messier had a difficult time finding a new job and began to suspect that Thrivent was saying negative things about him to prospective employers who called for reference checks. The EEOC alleges that during these reference checks, Thrivent was revealing information about Messier's migraine condition to prospective employers in violation of the ADA's requirement that employee medical information obtained from "medical examinations and inquiries" must be "treated as a confidential medical record." 42 U.S.C. § 12112(d). The district court found that Thrivent learned of Messier's migraine condition outside the context of a medical examination or inquiry. Therefore, the confidentiality provisions of 42 U.S.C. § 12112(d)(3) did not apply, and the district court granted summary judgment to Thrivent. For the reasons explained below, we agree that Thrivent did not learn about Messier's migraine condition as the result of 42 U.S.C. § 12112(d) "medical examinations and inquiries." Consequently, Thrivent had no duty to treat its knowledge of Messier's migraine condition as a confidential medical record, and we affirm the judgment of the district court.

**I**

Because Thrivent and the EEOC filed cross-motions for summary judgment in the district court, we review the district court's grant of summary judgment to

Thrivent de novo, "constru[ing] all inferences in favor of the party against whom the motion under consideration is made," here, the EEOC. *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir 2005). After hiring Messier to serve as a temporary SAS programmer in Thrivent's Appleton, Wisconsin office, Omni assigned Messier to work as a Business Analyst in the Fraternal Support Service Department, under the supervision of Thrivent employee John Schreiner. Messier worked at Thrivent for almost four months without incident, and during that time, he was "very good about notifying" both Thrivent and Omni when he planned to be absent from work. On November 1, 2006, however, Messier failed to report to work. Because Messier had not notified anyone at Thrivent about his absence, Schreiner called Messier's Account Manager at Omni, Thomas Brey, looking for Messier, but Brey was equally ignorant as to why Messier had failed to report to work that morning. A puzzled Brey then sent the following email to Messier: "Gary, Give us a call, and give John a call. We need to know what is going on. John called here looking for you." For hours, neither Schreiner nor Brey heard anything from Messier. At last, Messier sent the following email to Schreiner and Brey at 4:53 p.m.:

> Tom/John
>
> I've been in bed all day with a severe migraine. Have not had one this severe in over six years. Three doses of Imitrex today and I am finally able to function. Sorry for the very late reply but when I get migraines of this severity I am bed

ridden until I can get them to a level so I can function. People have many medical conditions that are not obvious on the surface. They struggle with them every-day and try to get thru [sic] life one day at a time. I've had these migraines since a major car accident in 1984. Because this was a head on at 50 miles an hour I am very lucky to have lived thru [sic] it. But these migraines are an end result of the head trauma that I experienced that day. I have been waiting for the medical field to come up with a solution ever since. I am attending a few sessions, this coming Saturday, in a seminar sponsored by Theda-Care on Brain & Spine conditions. Hopefully this may provide the information that I have been searching for to help alleviate this situation. The medical field has come a long way since 1984. I am currently reaping some of the benefits to help control this problem with the medication regiment that I am currently on. At least I am functional most days but when I have one of the severity I had today do not expect any response from me or even a phone call as the pain level is so severe that it puts most people in the hospital. I have been dealing with this pain for a long time and I have found the best way to deal with it is to let it run its course. Probably a lot more than either of you wanted to know but I want to be totally honest with both of you. If all goes well I will be in tomorrow on schedule. I hope this answers your concerns and that I am fully commited [sic] to

Thrivent and Omni thru [sic] the remainder of my contract.

Gary

Brey responded to Messier's email a few hours later urging Messier to "get better" and to "let me know . . . [i]f there is anything that I or Omni can do."

Despite Messier's assurance that he was fully committed through the remainder of his contract, Messier quit his job with Thrivent only a month later on December 4, 2006. The record is not clear about why Messier quit, but statements by Schreiner that "we ran into a very strong disagreement on expectations and he walked out on us" suggest that the parting was not on good terms. Messier soon began looking for new employment, and in the months that followed, three prospective employers lost interest in him after conducting reference checks. Concerned about what Schreiner was telling prospective employers, Messier hired Reference Matters, Inc. (RMI), an online reference checking agency, to find out what Schreiner was saying. On January 10, 2008, an RMI agent called Schreiner pretending to be a prospective employer interested in hiring Messier. During the phone conversation with RMI, Schreiner disclosed that Messier "has medical conditions where he gets migraines. I had no issue with that. But he would not call us. It was the letting us know."

Based on Schreiner's conversation with RMI, Messier filed a charge with the EEOC alleging disability discrimination under the ADA on August 25, 2008. The EEOC first issued a "Letter of Discrimination" to Thrivent on

March 15, 2010, which stated that the EEOC found reasonable cause to believe that Thrivent had violated the ADA. When this letter failed to induce a settlement between Messier and Thrivent, the EEOC filed the instant action on September 30, 2010, alleging that Thrivent had violated the ADA confidentiality provisions contained in 42 U.S.C. § 12112(d) by "revealing to prospective employers Messier's confidential medical information obtained from a medical inquiry." 42 U.S.C. § 12112(d), entitled "Medical examinations and inquiries," provides in relevant part:

(1) In general

The prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries.

. . .

(3) Employment entrance examination

. . .

(B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that—

(i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;

(ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and

(iii) government officials investigating compliance with this chapter shall be provided relevant information on request; and

(C) the results of such examination are used only in accordance with this subchapter.

(4) Examination and inquiry

. . .

(B) Acceptable examinations and inquiries

A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.

(C) Requirement

Information obtained under subparagraph (B) regarding the medical condition or history of any employee are subject to the requirements of subparagraphs (B) and (C) of paragraph (3).

With this statutory language in mind, the district court quickly realized that before it could decide whether Schreiner's statements to RMI violated the confidentiality provisions outlined in 42 U.S.C. § 12112(d)(3)(B), it must first decide whether the confidentiality provisions even applied to Messier's situation. Determining whether these provisions applied required deciding a threshold issue: "whether Thrivent received Messier's medical information through a medical inquiry." Consequently, the district court urged both sides to file cross-motions for summary judgment on this threshold issue, which both parties filed on March 1, 2011. In the text of its motion, the EEOC only asked the court to find that Messier's disclosure of his migraine condition was "done in the context of a medical inquiry of Messier by Thrivent."[1] Nevertheless, in the course of the EEOC's

---

[1] The EEOC's motion for summary judgment sought only "summary judgment on the first, third, and fifth affirmative defenses asserted in the Answer filed by defendant Thrivent Financial for Lutherans on November 29, 2010." The text of Thrivent's first, third, and fifth affirmative defenses is as follows:

> 1. The complaint fails to state a claim against Thrivent upon which relief can be granted.

> 3. Thrivent was never Messier's employer; it never obtained any of Messier's confidential medical information from a medical inquiry; and it never made a medical inquiry of Messier.

> 5. Messier apparently voluntarily disclosed to his employer OMNI Resources, Inc. that he missed work

(continued...)

briefs to support its motion and to oppose Thrivent's motion, the EEOC argued that Messier's disclosures would be covered by the 42 U.S.C. § 12112(d)(3)(B) confidentiality provisions if either of the following were true: (1) Thrivent learned about Messier's migraine condition in the course of conducting a medical inquiry, or (2) Thrivent learned about Messier's migraine condition in the course of conducting "inquiries into the ability of an employee to perform job-related functions" under 42 U.S.C. § 12112(d)(4)(B).

In granting Thrivent's motion for summary judgment, the district court focused on the EEOC's first argument—whether Thrivent had learned about Messier's migraine condition through a medical inquiry—presumably since the text of the EEOC's motion had focused only on whether Brey's email to Messier constituted a medical inquiry (as opposed to a broader job-related inquiry). The district court found that Brey's email did not constitute a medical inquiry because "[g]iven the vast number of reasons an employee could miss work without informing his employer, it seems unreasonable to assume that an employer checking in on his absent em-

---

[1] (...continued)

assignments at Thrivent due to migraine headaches. Messier's voluntary disclosure of this information was not done in the context of a medical inquiry of Messier by Thrivent.

The EEOC's motion for summary judgment does not mention anything about job-related inquiries.

ployee has the intent to request or acquire medical information." On appeal, the EEOC drops the argument that Brey's email to Messier constituted a medical inquiry. Instead, the EEOC focuses on its second argument that the ADA's confidentiality provisions protect all employee medical information revealed through "job-related" inquiries. Because the EEOC's broad construction of the term "inquiries" in 42 U.S.C. § 12112(d) is not supported by the language of the statute, we reject the EEOC's second argument.

## II

At heart, this case is one of statutory interpretation. If the term "inquiries" in 42 U.S.C. § 12112(d) refers only to medical inquiries, as Thrivent urges, then the EEOC's claim fails since the EEOC concedes on appeal that Brey's email was not a medical inquiry. On the other hand, if the term "inquiries" in 42 U.S.C. § 12112(d) refers to all job-related inquiries, as the EEOC urges, then the EEOC's claim fares better. The EEOC particularly urges us to adopt its admittedly "liberal interpretation" of 42 U.S.C. § 12112(d) because it is "consistent with clear congressional intent." But as the U.S. Supreme Court pointed out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984), "[w]hen a court reviews an agency's construction of the statute it administers," it must first consider "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter." Here, we conclude that

42 U.S.C. § 12112(d) has a "plain meaning" that cannot be ignored, and therefore, "we do not need to reach the question of the proper deference owed" to the EEOC's interpretation of the statute. *Vulcan Constr. Materials, L.P. v. Fed. Mine Safety & Health Review Com'n*, ___ F.3d ___, 2012 WL 5259008, at *14 (7th Cir. Oct. 25, 2012).

In support of its motion for summary judgment, the EEOC offered the Merriam-Webster definition of the word "inquiry," which can mean, among other things, "a request for information." Brey's email was clearly a request for information, and the EEOC correctly construed Brey's email as an inquiry under this generalized definition. Yet the EEOC's reliance on this generalized definition of "inquiry" ignores the specific context in which the term "inquiry" is used throughout 42 U.S.C. § 12112(d).

The title of 42 U.S.C. § 12112(d) is "[m]edical examinations and inquiries." According to the Merriam-Webster definition, the coordinating conjunction "and" is "used as a function word to indicate connection or addition *especially of items within the same class or type*." MERRIAM-WEBSTER DICTIONARY ONLINE, *available at* http://www. merriam-webster.com/dictionary/and (last visited Nov. 16, 2012) (emphasis added). Consequently, the use of the inclusive conjunction "and" in the title—instead of a limiting or contrasting conjunction such as "or"—suggests that the examinations and inquiries referred to in the title of section (d) are within the same class or type: they are both medical. At the very least, the use of the conjunction "and" indicates that the adjective "medical" modifies both "examinations" and "inquiries."

The subject matter discussed in the body of section (d) confirms that the word "inquiries" does not refer to all generalized inquiries, but instead refers only to *medical* inquiries. The entire section is devoted to a discussion of a disabled employee's "medical record," "medical condition or history," "medical files," and medical "treatment." In fact, the EEOC's argument that the term "inquiries" in section (d) refers to all employer inquiries (not just employer medical inquiries) rests almost entirely on a single reference to "job-related" inquiries in 42 U.S.C. § 12112(d)(4)(B). Yet once the "job-related" inquiries language in section (d)(4)(B) is read in the context of the entire section, it is easy to see that "job-related" inquiries refer only to job-related *medical* inquiries:

> A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.

The sentence preceding the "job-related" inquiries language in section (d)(4)(B) discusses permissible employer-initiated medical activities, including examinations, histories, and health programs regarding an employee's medical health. Logically, the next sentence continues this discussion of permissible employer-initiated medical activities, including job-related inquiries regarding an employee's medical health. In sum, the EEOC's argument that the word "inquiries" in 42 U.S.C. § 12112(d)(4)(B)

refers to all job-related inquiries, not just medical ones, ignores the content of the rest of the section.

### III

We are also not persuaded by the EEOC's claim that the case law interpreting 42 U.S.C. § 12112(d)(4)(B) is on its side. The EEOC argues that other courts have chosen to read the term "inquiries" more broadly and have interpreted the term to mean all employer-initiated, job-related inquiries. To support this proposition, the EEOC principally relies on two cases: *Doe v. U.S. Postal Serv.*, 317 F.3d 339 (D.C. Cir. 2003) and *E.E.O.C. v. Ford Motor Credit Co.,* 531 F. Supp. 2d 930 (M.D. Tenn. 2008).

In *Doe*, the plaintiff, John Doe, fell ill with an AIDS-related illness and missed several weeks of work. It was not clear from the facts whether the Postal Service knew that Doe was HIV-positive; however, the Postal Service clearly knew that Doe was ill since he had already taken weeks of sick leave. After Doe had been absent for two months, his supervisor sent a letter instructing him "to complete and submit, within five calendar days, a Postal Service administrative form and a medical certificate 'provid[ing] an explanation of the nature of [his] illness.' If he failed to submit these forms, the letter warned, he would face potential disciplinary action for being absent without leave." *Doe*, 317 F.3d at 341. The D.C. Circuit held that the supervisor's letter constituted an inquiry under 42 U.S.C. § 12112(d)(4)(B). *Id*. at 344.

In *Ford Motor*, John Doe, another HIV-positive plaintiff, requested time off work one day per week so that he could participate in an HIV-treatment study. Doe had already missed work on previous occasions to go to HIV-related doctors' appointments. Before Doe's supervisor, Danny Dunson, would allow Doe to miss additional work and participate in the weekly study, Dunson demanded to know Doe's diagnosis. The court found that these facts presented "an issue for trial as to whether Mr. Dunson's questioning of Mr. Doe amounted to an inquiry." *Ford Motor*, 531 F. Supp. 2d at 937.

The EEOC claims that *Doe* and *Ford Motor* stand for the proposition that "inquiries" under 42 U.S.C. § 12112(d)(4)(B) include all interactions between the employer and the employee that (1) are initiated by the employer, and (2) result in the employee revealing medical information. Yet in both *Doe* and *Ford Motor*, the employers initiated the interactions *with some pre-existing knowledge that the employee was ill or physically incapacitated.* Additional case law supports this notion that an employer must already know that an employee is ill or physically incapacitated before initiating the interaction in order for the interaction to be considered an inquiry under 42 U.S.C. § 12112(d)(4)(B).

In *Harrison v. Benchmark Electronics Huntsville, Inc.*, 593 F.3d 1206 (11th Cir. 2010), for example, the Eleventh Circuit reversed a district court's grant of summary judgment to Benchmark, the employer, because it found that the employee, John Harrison, had sufficiently alleged that Benchmark made an inquiry. Harrison had

failed a drug test administered by Benchmark. The drug test itself did not constitute a medical examination or inquiry since, under the ADA, drug tests are not considered medical examinations. *See* 42 U.S.C. § 12112(b). Nevertheless, the court held that if Harrison's allegations were true, what happened after the drug test did constitute an inquiry under 42 U.S.C. § 12112(d)(4)(B). A human resources officer confronted Harrison with his positive drug test results. Harrison informed the officer that his epilepsy medication likely triggered the positive result. The human resources officer then told Harrison to retrieve his prescription, and after he did, additionally had Harrison discuss his medication with the drug testing agency's medical review officer. In Harrison's case, the employer had initiated an interaction with Harrison after learning that he might suffer from a drug problem, and thus, the court found sufficient allegations of a 42 U.S.C. § 12112(d)(4)(B) inquiry. *Harrison*, 593 F.3d at 1214-15.

Similarly, in *Fleming v. State Univ. of New York*, 502 F. Supp. 2d 324, 338 (E.D.N.Y. 2007), the plaintiff, Dr. Lester Fleming, was a medical resident who suffered from sickle-cell anemia. During his residency, Fleming was hospitalized for complications from the disease, and Fleming advised his attending physicians that he would be absent from work while he was in the hospital. Up to this point, Fleming had never revealed to any of his attending physicians that he suffered from sickle-cell anemia. After learning that he was in the hospital, one of Fleming's attendings called Fleming to ask why he was in the hospital. Only then

did Fleming reveal his disease, at which point the attending advised him that he would need a doctor's letter in order to return to work. The court held that these facts were sufficient to allege an inquiry under 42 U.S.C. § 12112(d)(4)(B). Like the previous cases, the employer in *Fleming* initiated an interaction with the employee after learning that he was ill.

As these cases illustrate, previous courts have required—at minimum—that the employer already knew something was wrong with the employee before initiating the interaction in order for that interaction to constitute a 42 U.S.C. § 12112(d)(4)(B) inquiry. Neither Thrivent nor Omni had any such knowledge here. There is no evidence in the record suggesting that Thrivent or Omni should have inferred that Messier's absence on November 1, 2006 was due to a medical condition. There is no evidence in the record that Messier had been sickly during his first four months of employment. There is no evidence that Messier had experienced a headache at work during his first four months. For all Thrivent and Omni knew, Messier's absence was just as likely due to a non-medical condition as it was due to a medical condition. Indeed, as Thrivent pointed out to the district court, "Messier could have had transportation problems, marital problems, weather-related problems, housing problems, criminal problems, motivational problems, a car or home accident, or perhaps he simply decided to quit his job at OMNI (which he did just a month later on December 4, 2006.)" When Brey emailed Messier on November 1, 2006, he had no idea that Messier was ill—let alone disabled. For this reason,

Brey's email cannot be an inquiry for the purposes of 42 U.S.C. § 12112(d)(4)(B).


**IV**

For the above reasons, we reject the EEOC's argument that the term "inquiries" as used in 42 U.S.C. § 12112(d)(4)(B) refers to all job-related inquiries, and not just medical inquiries. Because the EEOC concedes on appeal that Brey's email to Messier was not a medical inquiry, Thrivent was not required to treat the medical information that Messier sent in response to Brey's email as a confidential medical record. Thus, Thrivent did not violate the requirements of 42 U.S.C. § 12112(d) by revealing Messier's migraine condition to RMI because the statute did not apply. We accordingly AFFIRM the decision of the district court granting summary judgment to Thrivent.