# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 2, 2019      Decided September 15, 2020

No. 18-5284

CASSANDRA M. MENOKEN,
APPELLANT

v.

JANET DHILLON,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-02480)

*Cassandra M. Menoken*, *pro se*, argued the cause and filed the briefs for appellant.

*Johnny H. Walker*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

*Matthew M. Collette* and *R. Craig Kitchen* were on the brief for *amicus curiae* R. Craig Kitchen in support of appellant.

Before: MILLETT, WILKINS, and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: Cassandra Menoken worked as an attorney for the Equal Employment Opportunity Commission ("EEOC") from 1982 until 2019. In 2016, Menoken filed a lawsuit against the EEOC alleging that the agency—in its capacity as her employer—had subjected her to a hostile work environment in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, and had violated her rights under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* The district court dismissed Menoken's complaint in its entirety for failure to state a claim and subsequently denied her motion for reconsideration. We find that the district court erred in dismissing Menoken's retaliatory hostile work environment claim under Title VII, as well as her interference and reasonable accommodation claims under the Rehabilitation Act. We therefore reverse and remand these claims to the district court. Because we conclude the district court properly dismissed Menoken's confidentiality and medical inquiries claims, we affirm that part of the district court's order.

## I.

Menoken's primary claim was that the EEOC violated Title VII by engaging in a multi-year pattern of harassment and hostility in retaliation for her filing various anti-discrimination and retaliation claims against the Office of Personnel Management ("OPM"), the Social Security Administration, and the Department of Health and Human Services beginning in 1994. Menoken alleged that the EEOC's persistently hostile behavior caused her to experience and seek medical treatment for "depression, acute stress, severe hypertension and 'complex' post-traumatic stress disorder." Am. Compl. ¶ 21.

As a result of these medical conditions, Menoken sought a reasonable accommodation from the EEOC under the Rehabilitation Act, which requires that federal employers such as the EEOC accommodate individuals with disabilities under the same standards as the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 *et seq.* The EEOC denied Menoken's request for a reasonable accommodation. In her complaint, Menoken raised four separate claims under the Rehabilitation Act: *First*, the EEOC unlawfully denied her request for a reasonable accommodation for a known disability ("the reasonable accommodation claim"); *second*, the EEOC violated the Act's restrictions on conducting inquiries into an employee's medical condition ("the medical inquiries claim"); *third*, the EEOC violated the Act's confidentiality requirements for employee medical records ("the confidentiality claim"); and *fourth*, the EEOC unlawfully interfered with Menoken's attempt to exercise rights protected under the Act ("the interference claim").

The EEOC moved to dismiss Menoken's complaint or, in the alternative, for summary judgment. The district court dismissed the complaint in its entirety for failure to state a claim. *See Menoken v. Lipnic*, 300 F. Supp. 3d 175, 190 (D.D.C. 2018). The court allowed for refiling of the Title VII claim but dismissed the Rehabilitation Act claims with prejudice because each suffered from deficiencies that could not be cured through amendment. *Id.* at 185–90.

Menoken then filed a motion for reconsideration of the Rehabilitation Act claims, which the district court denied. *Menoken v. Lipnic*, 318 F. Supp. 3d 239, 241 (D.D.C. 2018) ("*Reconsideration Decision*"). Among other things, Menoken challenged the district court's holding that there is no cognizable claim for "interference" under the Rehabilitation Act separate and apart from a claim for reasonable

accommodation. In its decision denying the motion, the court acknowledged the relevant statutory language of the Act prohibiting unlawful interference, but concluded that this section was treated as a retaliation provision and that Menoken had failed to establish a *prima facie* case of retaliation. *Id.* at 244–45.

This timely appeal followed. Following oral argument, the court ordered supplemental briefing on (1) the proper legal standard for an interference claim under 42 U.S.C. § 12203(b), and (2) whether the amended complaint stated a claim for interference under the proper standard. Because Menoken was proceeding pro se, we appointed R. Craig Kitchen as amicus curiae to present arguments in support of Menoken. He has ably discharged those responsibilities.

## II.

On appeal, Menoken challenges both the district court's dismissal of the Title VII and Rehabilitation Act claims alleged in her complaint and its denial of her motion for reconsideration of the Rehabilitation Act claims. We review de novo the district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "accept[ing] as true all of the complaint's factual allegations and draw[ing] all reasonable inferences in favor of the plaintiff[]." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018). As a general rule, we review a district court's denial of a motion for reconsideration for abuse of discretion; however, because the district court's reconsideration decision relied on a different legal theory to dismiss Menoken's interference claim under the Rehabilitation Act, we review that claim de novo. *See Dyson v. District of Columbia*, 710 F.3d 415, 419–20 (D.C. Cir. 2013). Applying these standards, we consider each of Menoken's claims in turn.

5

A.

Menoken first contends that the district court erred by dismissing her retaliatory hostile work environment claim under Title VII. In her amended complaint, Menoken alleged that the EEOC violated Title VII by subjecting her to a hostile work environment in retaliation for engaging in activity protected by Title VII—namely, the discrimination and retaliation claims Menoken had filed against various federal agencies over the years.

To state a retaliation claim under Title VII, a plaintiff must allege: "(1) [she] engaged in protected activity; (2) [she] was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015) (quoting *Hairston v. Vance-Cooks*, 773 F.3d 266, 275 (D.C. Cir. 2014)) ("*Baird II*"). A plaintiff may bring a "special type of retaliation claim based on a 'hostile work environment'" by alleging a series of "individual acts that may not be actionable on [their] own but become actionable due to their cumulative effect." *Id.* (cleaned up). The acts in question must be both "adequately linked such that they form a coherent hostile environment claim," and "of such severity or pervasiveness as to alter the conditions of … employment and create an abusive working environment." *Id.* at 168–69 (cleaned up). To determine whether a group of alleged acts is sufficiently linked, courts often consider whether the acts in question "involve[d] the same type of employment actions, occur[ed] relatively frequently, and [were] perpetrated by the same managers." *Id.* at 169. When assessing whether the acts were severe and pervasive enough to constitute a hostile work environment, a court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Menoken pointed to events that took place between 2002 and 2013 to support her allegations of a hostile work environment. She alleged that between 2002 and 2007, the EEOC and OPM worked together to retaliate against her and to undermine her pending EEOC appeals. She further alleged a series of incidents in 2013 involving anomalies related to her compensation and benefits, all of which were alleged to involve Menoken's supervisor, Carlton Hadden, and the EEOC's human resources director, Lisa Williams.

The district court found that the events before 2013 did not state a plausible hostile work environment because Menoken failed to allege that these events "were sufficiently linked, let alone [that] they should be linked with much later events in 2013." *Menoken*, 300 F. Supp. 3d at 189. We agree with the district court's conclusion that the events and conduct alleged to have occurred between 2002 and 2007 were insufficiently linked to form the coherent hostile work environment necessary to support a retaliation claim. *Cf. Baird II*, 792 F.3d at 168–69.

The district court then found that the allegations regarding problems with Menoken's pay and benefits in 2013 "may be sufficiently cohesive to undergird a hostile work environment allegation," but were *not* "sufficiently severe or pervasive" to have "interfere[d] with [Menoken's] work performance." *Menoken*, 300 F. Supp. 3d at 190 (quoting *Harris*, 510 U.S. at 23). In particular, the court noted that all of the alleged incidents took place while Menoken "was on voluntary leave, when she was performing no work to disrupt and was not in the workplace to suffer any hostility," and that therefore she could not establish "that her ability to perform work for the EEOC

was disrupted" as a result of these incidents. *Id.*

We disagree with the court's determination that the alleged pay and benefits-related issues in 2013 were insufficiently severe as a matter of law to have interfered with Menoken's work performance. As an initial matter, the district court incorrectly maintained that incidents that took place while Menoken was on leave could not support a retaliatory hostile work environment claim. Our court has explicitly "reject[ed] a *per se* rule against considering incidents alleged to have occurred while an employee was physically absent from the workplace." *Greer v. Paulson*, 505 F.3d 1306, 1314 (D.C. Cir. 2007). Accordingly, courts should consider "any negative actions the employer takes during the [employee's] absence" when assessing whether a plaintiff has plausibly alleged a hostile work environment. *Id.* Here, Menoken alleged not only that Hadden engaged in conduct that resulted in anomalies in her payroll account, but that both Hadden and Williams ignored Menoken's attempts to communicate about the anomalies that resulted in the denial of compensation and the threatened loss of health insurance. Menoken further alleged that she "began experiencing heightened anxiety in the wake of" these incidents. Am. Compl. ¶ 115. These allegations did not describe the kind of "ordinary tribulations of the workplace" that courts have refused to find actionable. *Brooks v. Grundmann*, 748 F.3d 1273, 1277–78 (D.C. Cir. 2014) (citations omitted). To the contrary, an employer's deliberate attempts to affect an employee's finances and access to healthcare strike us as precisely the type of conduct that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) ("*Baird I*").

Therefore, we reverse the district court's decision

dismissing Menoken's retaliatory hostile work environment claim under Title VII for events occurring in 2013. On remand, the district court may consider any additional arguments raised by the EEOC in favor of dismissal that the court did not previously reach. *See* EEOC Br. 33–34, 37.

B.

Menoken next argues that the district court erred in dismissing her claim that the EEOC violated the Rehabilitation Act by refusing to grant her request for a reasonable accommodation. The Rehabilitation Act incorporates provisions of the ADA that require employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A) (incorporated by reference in 29 U.S.C. § 791(f)). To state a claim for a violation of the Rehabilitation Act's reasonable accommodation requirements, a plaintiff must allege that "(i) she was disabled within the meaning of the Rehabilitation Act; (ii) her employer had notice of her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for a reasonable accommodation of that disability." *Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014) (citations omitted).

In her amended complaint, Menoken alleged that she suffered and sought medical treatment for physical and mental injuries resulting from the hostile work environment and sought a reasonable accommodation for those disabilities in 2012. In particular, the complaint alleged that "[o]n or about September 11, 2012," Menoken requested an appointment with the EEOC's disability program manager to discuss her "need for a reasonable accommodation." Am. Compl. ¶ 92. The complaint did not describe the precise type of accommodation

Menoken requested, except to say that she "suggested several accommodation options in 2012." *Id.* ¶ 99.

In its motion to dismiss and/or for summary judgment, the EEOC attached a copy of a form titled "Confirmation of Request for Reasonable Accommodation," which was dated September 11, 2012, and which listed "Cassandra M. Menoken" as the applicant. A-068 ("Confirmation Form"). Under the "Type of Accommodation Requested," the form indicated: "Paid leave for 6 months or until such time as my discrimination complaints are adjudicated (whichever is longer)." The EEOC also included a copy of a letter from Dr. Karin Huffer to the EEOC's disability program manager dated September 25, 2012, which diagnosed Menoken's medical condition and offered the physician's view that "the accommodation that would be most effective … would be for EEOC to grant leave for six months or the period that [Menoken's] EEOC cases remain pending, whichever is longer." A-072 ("Huffer Letter"). The EEOC argued these documents demonstrated that Menoken requested "indefinite paid leave" as an accommodation for her disability. A-052–53. In response, Menoken filed a declaration (attached to her opposition to the EEOC's motion) in which she "den[ied] EEOC's assertion that [she] requested 'indefinite' paid leave," and averred that she had also "suggested as an accommodation that alternative arrangements be made for [her then-pending] OPM appeals or that [she] be temporarily reassigned to another position." A-109.

In analyzing the reasonable accommodation claim, the district court noted the absence of allegations in the complaint about the precise accommodation Menoken requested, but explained that it could consider both the Confirmation Form and the Huffer Letter in connection with the EEOC's motion to dismiss because both were "documents 'upon which the

plaintiff's complaint necessarily relies.'" *Menoken*, 300 F. Supp. 3d at 186 (quoting *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119–20 (D.D.C. 2011)). The district court found that "[b]y their clear terms," both documents "asked for *paid* leave for so long as Ms. Menoken's then-current EEO complaints were pending." *Id.* Accordingly, the court held that Menoken failed to allege she was a "qualified individual" because "the very accommodation [she] requested was to *not* perform the necessary functions of her position for so long as her EEO charges were pending, which is the exact opposite of showing that she was qualified to perform her job with an accommodation." *Id.* The court further held that Menoken's request for "paid leave for an extended period of unknown duration was not reasonable" as a matter of law. *Id.* at 187. Accordingly, it dismissed the claim with prejudice.

We hold the district court erred by treating the Confirmation Form and Huffer Letter as definitive proof that the only accommodation Menoken sought was "an uncertain and indefinite amount of paid leave." *Id.* at 186. On their face, these documents reflect only that at one point in the reasonable accommodation process Menoken proposed paid leave as one accommodation option. She alleged, however, that she "suggested several accommodation options in 2012," Am. Compl. ¶ 99, and filed a declaration averring that she had also proposed temporary reassignment or an alternative appeals process as possible accommodations, A-109.

In considering claims dismissed pursuant to Rule 12(b)(6), we accept a plaintiff's factual allegations as true and draw all reasonable inferences in a plaintiff's favor. *Owens*, 897 F.3d at 272. Applying this standard, the district court erred by relying on two documents outside the complaint as dispositive evidence of the nature of Menoken's accommodation request.

Accordingly, we reverse the district court's dismissal of the reasonable accommodation claim and remand for further consideration of Menoken's reasonable accommodation allegations.

C.

Menoken also contends the district court erred by dismissing her claim that the EEOC unlawfully interfered with her exercise of rights protected under the Rehabilitation Act. In its initial decision granting the EEOC's motion to dismiss, the district court held that unlawful interference "is not cognizable as a separate claim under [the Rehabilitation Act]," and that a plaintiff may challenge only a wrongful denial of a reasonable accommodation request, not the sufficiency of the process relating to such a request. *Menoken*, 300 F. Supp. 3d at 188.

In her motion for reconsideration, Menoken argued the district court erred in its finding that the Rehabilitation Act does not recognize an interference claim "'separate and distinct' from a claim alleging failure to reasonably accommodate." A-155. She pointed to a distinct provision of the ADA that covers interference specifically, *see* 42 U.S.C. § 12203(b) (incorporated by reference in 29 U.S.C. § 791(f)), and argued that her complaint stated an independent claim for interference with the exercise of her statutorily protected right to seek a reasonable accommodation.

In denying the motion for reconsideration, the district court acknowledged that 42 U.S.C. § 12203(b) makes it unlawful for a federal employer "to coerce, intimidate, threaten or *interfere with* any individual" in the exercise or enjoyment of "any right granted" under the statute. *Reconsideration Decision*, 318 F. Supp. 3d at 244 (quoting 42 U.S.C. § 12203(b)) (emphasis added). But the court then concluded that section 12203(b) "is

treated as a retaliation provision in this jurisdiction," and that Menoken's complaint failed to plausibly allege that the EEOC retaliated against her for exercising her right to request a reasonable accommodation. *Id.* (citing *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015)).

Our court has not previously addressed the proper standard for analyzing interference claims under section 12203(b). We ordered supplemental briefing from the parties and the court-appointed amicus on this question, and now conclude that the district court erred by treating section 12203(b) as an anti-retaliation provision. This conclusion is compelled by a straightforward reading of the statute, which includes separate provisions prohibiting retaliation and interference. Section 12203(a)—titled "Retaliation"—proscribes retaliation on the basis of statutorily protected activity, while section 12203(b)—titled "Interference, coercion, or intimidation"—prohibits "coerc[ion], intimidat[ion], threat[s], or interfer[ence] with" an employee in the exercise of statutorily protected rights.[1] The

---

[1]  42 U.S.C. § 12203(a)–(b) provides in full:

(a)  Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b)  Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

statute's text and structure reinforce that retaliation and interference are distinct protections. It would unnecessarily render section 12203(b) surplusage if we were to treat it as nothing more than another prohibition on retaliation. *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("We are reluctant to treat statutory terms as surplusage in any setting." (citation and quotation marks omitted)).

Having determined that section 12203(b) does not operate as a retaliation provision subject to Title VII's burden-shifting framework, the question that follows is what framework courts *should* apply when analyzing interference claims under section 12203(b). The parties offer different answers to that question. Amicus, joined by Menoken, contends that we should adopt the standards for section 12203(b) claims endorsed by the Seventh Circuit in *Frakes v. Peoria School District No. 150*, 872 F.3d 545 (7th Cir. 2017), and the Ninth Circuit in *Brown v. City of Tucson*, 336 F.3d 1181 (9th Cir. 2003). Br. of Amicus Curiae 8–9. Both courts concluded that interference claims under the ADA should draw on case law interpreting and applying the anti-interference provision of the Fair Housing Act ("FHA"), 42 U.S.C. § 3617,[2] which uses language identical to section 12203(b). *See Frakes*, 872 F.3d at 550; *Brown*, 336 F.3d at 1191.

The EEOC, on the other hand, argues that we should "adopt a standard that tracks the specific statutory language" of section

---

[2]  42 U.S.C. § 3617 provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

12203(b) by requiring plaintiffs to allege "that the employer (1) coerced, intimidated, threatened, or interfered with any individual (2) (a) in the exercise or enjoyment of, or (b) on account of his or her having exercised or enjoyed, or (c) on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, (3) any right granted or protected by this chapter." EEOC Supp. Br. 4. To provide substance to that standard, the EEOC urges us to look not only to case law interpreting the FHA, but also to cases analyzing interference claims under the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*

There is significant overlap in the tests advocated by the parties. The primary substantive difference is that the test advocated by amicus and Menoken requires plaintiffs to allege an employer's discriminatory intent, *see Frakes*, 872 F.3d at 551, while the EEOC's proposed framework directs courts to focus on how a reasonable employee would have understood the employer's action. The parties otherwise seem to agree on the basic elements of a section 12203(b) claim, and both also cite the Ninth Circuit's decision in *Brown* for the proposition that the term "interfere" under section 12203(b) cannot be construed "so broad[ly] as to prohibit any action whatsoever [that] in any way hinders a member of a protected class." *Brown*, 336 F.3d at 1192 (cleaned up). *Compare* EEOC Supp. Br. 8 *with* Br. of Amicus Curiae 9.

We need not adopt a particular standard for section 12203(b) claims in this case, nor determine the precise requirements for actionable interference under the statute, because Menoken's complaint when read as a whole stated a claim for unlawful interference under either proposed standard. The Amended Complaint described a "10 year pattern of hostile and adverse treatment rooted in [the EEOC's]

antagonism towards [Menoken's]" protected activities under Title VII. Am. Compl. ¶ 27. Menoken alleged that, as a result of this persistently hostile behavior by her employer, she suffered significant physical and mental injuries, including "depression, acute stress, severe hypertension and 'complex' post-traumatic stress disorder." *Id.* ¶ 21. Accordingly, she alleged that she exercised her statutorily protected right to request that her employer provide a reasonable accommodation for her disability. *Id.* ¶¶ 25, 92–100. Menoken maintained that although the EEOC official responsible for handling this request was "aware[] of [Menoken's] weakened state, medically and emotionally," *id.* ¶ 97, the agency did not engage in good faith to determine what accommodation might be appropriate. Instead, Menoken alleged, the EEOC deliberately delayed processing her request, *id.* ¶¶ 94–95, and then sought to leverage her need for an accommodation to "extract legal concessions to benefit EEOC"—namely, by offering to "'grant' her reasonable accommodation request on the *condition* that [she] execute a 'general release' absolving EEOC of liability with respect to any claims arising from her employment," *id.* ¶¶ 96–97. Menoken further alleged that she refused to accept this offer, which she viewed as "outrageous and predatory," *id.* ¶ 97, but nonetheless "suggested several accommodation options"—all of which the EEOC rejected, "offering no alternatives," *id.* ¶ 99.

Reading the complaint as a whole and affording Menoken the benefit of all reasonable inferences, we find these allegations sufficient to state a claim for unlawful interference. As an initial matter, there is no dispute the complaint alleged that Menoken engaged in statutorily protected activity by requesting a reasonable accommodation for a disability, or that she was actively engaged in asserting those rights at the time the alleged interference occurred. *See* 42 U.S.C. § 12203(b). On the facts alleged at the pleading stage, we also find the

EEOC's efforts to delay processing Menoken's reasonable accommodation request and to persuade her to accept a settlement offer as a condition of granting her requested accommodation constituted at least a plausible claim of actionable interference with Menoken's rights under the Rehabilitation Act.

The EEOC argues that accepting Menoken's allegations would require us to adopt an expansive interpretation of "interference" that "would conflict with the requirement that both employers and accommodation-seeking employees engage in a 'flexible give-and-take … so that together they can determine what accommodation would enable the employee to keep working.'" EEOC Supp. Br. 7–8 (quoting *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014)). We share the EEOC's concerns about construing interference in such a way as to undermine the iterative reasonable accommodation process, and we are mindful of the need to avoid reading section 12203(b) so broadly that it would "prohibit any action whatsoever [that] in any way hinders a member of a protected class." *Brown*, 336 F.3d at 1192 (cleaned up). Our disposition of this case should not be read to suggest that allegations of a delay or a proposed settlement offer during the reasonable accommodation process necessarily amount to unlawful interference. Rather, our conclusion follows from reading "the allegations of the complaint as a whole." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011). Giving Menoken the benefit of reasonable inferences, the complaint described the nature of her disability, the EEOC's persistent and intentional efforts to undermine her exercise of statutorily protected rights, and the EEOC's apparent failure to engage with Menoken in good faith to identify a reasonable accommodation. Accordingly, we reverse the district court's dismissal of the interference claim and remand for further consideration of Menoken's interference allegations.

D.

Finally, we hold that the district court properly dismissed Menoken's medical inquiries and confidentiality claims under the Rehabilitation Act and that the court did not abuse its discretion in denying her request for reconsideration of these claims. The Act prohibits covered entities, including the EEOC, from "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such … inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A) (incorporated by reference in 29 U.S.C. § 791(f)). The statute further provides that "information obtained regarding the medical condition or history of [an employee]" must be "treated as a confidential medical record." *Id.* § 12112(d)(3)(B), (4)(C). Menoken alleged that the EEOC violated these provisions by "monitoring, and making public, [her] confidential medical information." Am. Compl. at 20. Specifically, Menoken contended that "in or around early 2014, EEOC arranged for a stranger, not employed by the government, to repeatedly access and review medical information in [her] [Office of Workers' Compensation Programs ("OWCP")] file" and the EEOC lacked a "legitimate business justification" for this action. *Id.* ¶¶ 43–47. The district court dismissed both the confidentiality and medical inquiries claims, explaining that the complaint contained no factual allegations suggesting that the EEOC accessed Menoken's OWCP file as part of an unlawful inquiry into her medical condition.

To state a claim for an unlawful medical inquiry, a plaintiff must allege that the employer in fact conducted an impermissible "inquiry into [the plaintiff's] medical condition." *Doe v. USPS*, 317 F.3d 339, 343–44 (D.C. Cir. 2003). Menoken's complaint contained no such allegation. The

only allegations that pertained to a medical inquiry by the EEOC were those relating to Menoken's request for a reasonable accommodation in 2012. As the district court explained, Menoken did not allege that the EEOC's attempt to access her OWCP files in 2014 bore any relation to its consideration of her reasonable accommodation request more than a year earlier. *See Menoken*, 300 F. Supp. 3d at 188. Even if she had alleged the files were accessed in connection with the accommodation request, such allegation alone would not create a plausible inference that the EEOC engaged in an *unlawful* inquiry. To the contrary, the Rehabilitation Act makes clear that employers may conduct "inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). Because the complaint lacks any factual allegations suggesting the EEOC attempted to access these files to conduct an impermissible disability-related inquiry, this claim must fail. *See Doe*, 317 F.3d at 345 (explaining that the Rehabilitation Act's medical inquiries and confidentiality provisions apply where an employer is "trying to determine whether [the employee] was unable to perform the functions of [her] position" (citation and quotation marks omitted)).

For similar reasons, Menoken's confidentiality claim must be dismissed. The Rehabilitation Act's confidentiality requirements attach to employee medical information that is obtained in the course of a permissible medical inquiry. 42 U.S.C. § 12112(4)(B)–(C). As already explained, however, Menoken failed to allege that the EEOC obtained her medical records in the course of an inquiry into her medical condition. Moreover, Menoken alleged that the files in question were obtained by OWCP in connection with her occupational injury claim in March 2014. Thus, the statutory obligation to treat Menoken's files "as a confidential medical record" rested with OWCP, not the EEOC.

In her motion for reconsideration, Menoken argued the district court erred by treating her medical inquiries and confidentiality claims as "'tied' to her reasonable accommodation claim." A-158. In its decision denying the motion for reconsideration, however, the district court explained that it had "analyzed [Menoken's] 'confidentiality' and … unlawful access' claims separate and apart from her 'reasonable accommodation' claim," and that Menoken had therefore "offer[ed] nothing to warrant reconsideration." *Reconsideration Decision*, 318 F. Supp. 3d at 243. We agree that the district court in its initial decision analyzed the sufficiency of the confidentiality and medical inquiries claims independently of the reasonable accommodation claim. *See Menoken*, 300 F. Supp. 3d at 184–89. Therefore, we find no abuse of discretion in the court's refusal to grant reconsideration of these claims.

* * *

For the foregoing reasons, we affirm the district court's order dismissing Menoken's confidentiality and medical inquiries claims under the Rehabilitation Act and the court's order denying reconsideration of those claims. We reverse the district court's order dismissing Menoken's retaliatory hostile work environment claim under Title VII, and her reasonable accommodation and interference claims under the Rehabilitation Act, and remand these claims for further proceedings consistent with this opinion.

*So ordered*.