**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 7, 2011

No. 10-10774

Lyle W. Cayce
Clerk

JOHN JEFFERSON, JR.,

Plaintiff – Appellant

v.

MILLERCOORS, L.L.C.,

Defendant – Appellee

Appeal from the United States District Court
for the Northern District of Texas
(4:09-CV-363)

Before JONES, Chief Judge, and HIGGINBOTHAM and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

John Jefferson appeals the grant of summary judgment in favor of his former employer, MillerCoors LLC, in this disability and discrimination lawsuit. Finding no error, we affirm.

I.

Jefferson, a self-described "black American," had been employed by MillerCoors for nearly thirty years when he injured his back at work. Walter J.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10774

Mellgren, Jr., a doctor of chiropractic, treated Jefferson's injuries, and Jefferson returned to work approximately four months later.

The Fort Worth brewery is divided into several different departments, with the largest two being Packaging and Shipping. Each employee is assigned to one department and is expected to perform any task as needed within that department, which requires employees to be able to perform more than one single job. There were over ten jobs within Shipping, but for most of Jefferson's employment he worked "can utility" in this department during the third shift, from 11:00 PM to 7:00 AM. Can utility duties were typically assigned to only one employee per shift.

After Jefferson's injury, he could no longer operate the double-wide forklift, although he attempted to perform his can utility duties using the single-wide forklift. In November 2006, Dr. Mellgren issued a Work Status Report designating Jefferson's work restrictions as "permanent" and prohibiting him from operating a double-wide forklift. The restrictions also appeared to prohibit Jefferson from working any job other than can utility. The next month, MillerCoors transferred several positions from the Shipping to the Packaging Department, including can utility.

In May 2007, the brewery decided to request updated restrictions for employees who had permanent disabilities. The brewery sent a letter to all forty employees with permanent restrictions, including Jefferson, and requested a medical update. Jefferson failed to respond. In late August, the brewery sent a follow-up request, which noted that if an update was not received by September 7, the brewery would assume that restrictions were no longer needed. On September 20, the brewery sent a third letter notifying Jefferson that the brewery considered him unrestricted. Yet Jefferson still claimed he needed restrictions and took several unapproved stretching breaks.

No. 10-10774

In April 2008, an arbitrator determined that MillerCoors had violated its union contract by moving the positions from Shipping to Packaging, and required that some of these positions be moved back to Shipping. However, because some positions remained with Packaging, Shipping employees now had additional duties, which demanded requiring can utility employees on the second and third shifts to operate double-wide forklifts.

When Jefferson returned to Shipping, the brewery reminded him that he still had no current work restrictions on file. A MillerCoors employee provided Jefferson with a list of doctors who could update his Work Status Report. The following month Jefferson submitted restrictions from Dr. Bolte, a doctor who was not on the approved list and who did not use the state-required form. When MillerCoors alerted Jefferson of the deficiencies, he provided a note from Dr. Mellgren saying that Jefferson's restrictions had not changed in the past two years. But Dr. Mellgren's note contained the same problems as Dr. Bolte's. A MillerCoors employee phoned Dr. Mellgren to get a better a sense of Jefferson's restrictions. After this conversation, Dr. Mellgren sent a form to MillerCoors that included restricting Jefferson to a maximum of two hours per day of sitting or standing. Because Jefferson's duties required him to sit while operating a forklift most of the day, MillerCoors could not accommodate these restrictions.

On August 22, 2008, a human resources manager explained to Jefferson that Dr. Mellgren's restrictions were too limiting and told him not to report to work. The manager directed Jefferson to see a doctor from the approved list if he wished to follow up. Jefferson visited one of these doctors in February 2010, who concluded that he was unable to return to work. Jefferson remained an inactive employee until September 1, 2010, when he retired.

In December 2008, Jefferson filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC), asserting that MillerCoors had

No. 10-10774

discriminated against him because of age, race, and disability. After the EEOC dismissed the charge, Jefferson filed this lawsuit.

II.

We review a grant of summary judgment *de novo*.[1] Summary judgment is appropriate if, after considering all the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] Jefferson alleges that the district court erred in granting summary judgment on his Americans with Disabilities Act (ADA) claim, as well as Age Discrimination in Employment Act (ADEA) and Title VII claims.

A.

Jefferson alleges two separate violations of the ADA. He first contends that MillerCoors failed to provide him with reasonable accommodations. Second, he argues that MillerCoors placed him on inactive status because of his disability.

Because the district court failed to address Jefferson's reasonable accommodation claim, we consider the claim implicitly rejected by the court.[3] The ADA prohibits discrimination "against a qualified individual with a disability because of the disability."[4] Discrimination includes "not making

---

[1] *Baker v. Metro Life Ins. Co.*, 364 F.3d 624, 627–28 (5th Cir. 2004).

[2] Fed. R. Civ. Pro. 56(a).

[3] *Soffar v. Dretke*, 368 F.3d 441, 470 (5th Cir. 2004).

[4] 42 U.S.C. § 12112(a) (2008). Congress amended the ADA in 2008, with the amendments taking effect on January 1, 2009. *See* Pub. L. No. 110-325, 122 Stat. 3553 (2008). We have previously held that these amendments are not retroactive, and the relevant moment in time is the time of the adverse employment action. *See E.E.O.C. v. Agro Distrib. LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009); *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 618 (5th Cir. 2009). The complaint alleged that the ADA discrimination occurred on August 22, 2008, when MillerCoors informed Jefferson he should not return to work. Thus, we apply the ADA as it existed before the 2008 amendments.

No. 10-10774

reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business."[5]  Relevant reasonable accommodations include modified work schedules or reassignment to a vacant position.

Jefferson requested that he either be allowed to operate only a standard forklift on the third shift or that he be transferred to can utility on the first shift, which did not require use of the double-wide forklift.  MillerCoors contends that operating a standard forklift on third shift could not be reasonably accommodated because to do so would excuse Jefferson from performing essential functions of the job.  Jefferson admits that after can utility was moved back to the Shipping Department, the duties required second- and third-shift employees to use the double-wide forklift.  "The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so."[6]  Thus, it was not an ADA violation for MillerCoors to refuse to allow Jefferson to continue his work on the third shift while only using a single-wide forklift.

Jefferson also contends that MillerCoors could have reasonably accommodated him by transferring him to the first shift, where the double-wide forklift was not needed for can utility.  However, Jefferson admits the first shift position was filled.  We have previously held that for a job reassignment to be a reasonable accommodation the position must exist and be vacant.[7]

---

[5] 42 U.S.C. § 12112(b)(5)(A) (2008).

[6] *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999).

[7] *Foreman v. Babcock & Wilcox, Co.*, 117 F.3d 800, 810 (5th Cir. 1997).

No. 10-10774

Moreover, Jefferson's ADA claims are undermined by his failure to engage in the ADA interactive process. A disabled employee and his employer are to engage in this process to find the best means of accommodating the disability.[8] Here, MillerCoors made repeated efforts to determine precisely what Jefferson's restrictions were, and Jefferson did not comply. When Jefferson's physician finally completed the requested paperwork, it indicated Jefferson could sit or stand for only two hours per day, a restriction that MillerCoors could not reasonably accommodate.[9]

B.

Jefferson also asserts that by placing him on inactive status, MillerCoors carried out an adverse employment action against him because of his disability. Jefferson claims a manager's comment constitutes direct evidence of discrimination and that the district court incorrectly applied the burden-shifting framework.[10] The manager allegedly said that he "didn't want anyone in his department who couldn't drive a forklift." Even assuming that the manager made this statement, however, Jefferson has not provided direct evidence of discrimination. Stray remarks evince unlawful discrimination only if made by a person with authority over the employment decision at issue or by someone who exerted influence over the decisionmaker.[11] It is undisputed that the manager who made this comment had no involvement in the decisions to require

---

[8] *Chevron Phillips*, 570 F.3d at 621.

[9] *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) ("Liability simply cannot arise under the ADA when an employer does not obstruct an informal interactive process; makes reasonable efforts to communicate with the employee and provide accommodations based on the information it possesses; and the employee's actions cause a breakdown in the interactive process.").

[10] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[11] *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607–08 (5th Cir. 2007).

No. 10-10774

updated work restrictions or to place Jefferson on inactive status. Thus, this comment does not meet the standard for direct evidence.

Assuming without deciding that Jefferson established a prima facie case of disability discrimination, he has failed to rebut MillerCoors's legitimate non-discriminatory reason for placing Jefferson on inactive status. MillerCoors asserts that it placed Jefferson on inactive status because of his repeated failure to comply with requests that he update his Work Status Report with recommendations from an approved physician. Further, the unapproved doctor's restrictions rendered Jefferson unable to perform any Shipping job.

MillerCoors required every employee with permanent restrictions to update his or her file with restrictions from an approved physician. Jefferson was the only employee who claimed to still need restrictions, but he failed to obtain the updated medical information. Jefferson has offered no valid summary judgment evidence to suggest that MillerCoors's explanation for its employment action is pretextual.

C.

MillerCoors offers the same explanation to defend against Jefferson's age discrimination claim under the ADEA. Jefferson's only rebuttal is as follows: of the forty employees who had work restrictions in 2007, ten were laid off or placed on involuntary leave, and all of these employees were over forty-years-old, with eight being over sixty years of age. These raw numbers alone do not show pretext or establish that MillerCoors put Jefferson on inactive status because of his age.[12] Under the ADEA, the plaintiff has the burden of establishing by a

---

[12] *See E.E.O.C. v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1184 (5th Cir. 1996) ("[S]tatistical evidence usually cannot rebut the employer's articulated nondiscriminatory reasons.").

No. 10-10774

preponderance of the evidence that age was the "but-for" cause of the employer's action.[13]  Jefferson has not met this burden.

## D.

Finally, Jefferson challenges the judgment against him in his Title VII race discrimination claim.  Here again, however, Jefferson cannot show evidence of pretext.  In opposition to summary judgment at the district court, Jefferson stated that affidavits of certain individuals "create a genuine issue of material fact of actual discriminatory intent and less favorable treatment."  Yet he failed to direct the district court to specific portions of these affidavits that supported his claim, as he is required to do under *Federal Rules of Civil Procedure* Rule 56(c).[14]  Nevertheless, the district court independently examined the record and found that Jefferson's supporting affidavits were not competent summary judgment evidence because they were conclusory, made without personal knowledge, and contained hearsay.[15]  Jefferson provided no competent summary judgment evidence to suggest that MillerCoor's actions were motivated by racial animus.

## III.

For the reasons stated above, we AFFIRM the grant of summary judgment in favor of MillerCoors.

---

[13] *See Gross v. FBL Financial Svs., Inc.*, 129 S. Ct. 2343 (2009).

[14] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[15] *See* Fed. R. Civ. Pro. 56(c)(4).