# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 13, 2015

Lyle W. Cayce
Clerk

————

No. 14-31161

————

FRED TAYLOR; VICKIE WILLIAMS; JESSICA WALKER; MICHAEL CARTER,

      Plaintiffs - Appellants

v.

CITY OF SHREVEPORT; WILLIE L. SHAW, JR., Individually and in his official capacity as Chief of Police; DUANE HUDDLESTON, Individually and in his official capacity as Deputy Chief of Police; DAVID KENT, Individually and in his official capacity as Assistant Chief of Police; DEBBIE STRICKLAND, Individually and in her official capacity as Captain of Shreveport Police Dept.,

      Defendants - Appellees

————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:13-CV-2227

————

Before JOLLY, HIGGINBOTHAM, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiffs-Appellants are police officers employed by the City of Shreveport (the "City"). The City's police department (the "Department") recently adopted a new sick leave policy entitled "SPD 301.06." Plaintiffs challenge SPD 301.06 on numerous statutory and constitutional grounds. They seek declaratory and injunctive relief, damages, fees, and costs.

No. 14-31161

The district court dismissed Plaintiffs' suit in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). We affirm in part, vacate in part, and remand for further proceedings.

## I.

"We review *de novo* the district court's decision to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6), accepting as true the well-pleaded factual allegations in the complaint."[1] "To survive a Rule 12(b)(6) motion to dismiss, the complaint 'does not need detailed factual allegations,' but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, 'raise a right to relief above the speculative level.'"[2] We may affirm a district court's order dismissing a claim under Rule 12(b)(6) "on any basis supported by the record."[3]

Defendants have attached copies of SPD 301.06 and its associated forms to their motion to dismiss. We may consider these documents when reviewing the district court's order.[4]

## II.

We begin with Plaintiffs' facial challenges to SPD 301.06 under federal law.

---

[1] *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (internal quotation marks and citations omitted).

[2] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[3] *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013) (citing *Torch Liquidating Trust ex rel. Bridge Assocs. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009)).

[4] *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (holding that a court may consider "[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim" (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993))).

No. 14-31161

A.

Plaintiffs first challenge SPD 301.06's home confinement provisions. The policy provides that an officer on sick leave must generally remain at his or her residence for the entire sick leave period. However, the officer may leave his or her home to (1) vote; (2) participate in religious activities; (3) obtain medication; (4) undergo medical care, rehabilitative or therapeutic exercise, or other therapeutic activities; and (5) obtain food or meals. The officer need not first obtain permission to engage in any of these enumerated activities.

Plaintiffs assert that the home confinement provisions violate their rights to travel and associate with others under the Substantive Due Process clause of the United States Constitution.

A "police department, as a paramilitary organization, must be given considerably more latitude in its decisions regarding discipline and personnel management than the ordinary government employer."[5] As a result, "the Police Department's sick leave regulations must be reviewed deferentially."[6] We will reverse on this issue only if "the regulations bear no rational relationship to a legitimate state interest."[7]

SPD 301.06's home confinement provisions rationally serve the Department's legitimate interests in safety and morale "by expediting the recovery of sick officers, minimizing the burden on officers who may have to work longer hours while other officers are out sick, and assuring that officers on sick leave are not malingering and that the sick leave policy is not abused."[8] Importantly, the restrictions about which Plaintiffs complain "are not

---

[5] *Crain v. Bd. of Police Comm'rs of the Metro. Police Dep't of the City of St. Louis*, 920 F.2d 1402, 1409 (8th Cir. 1990) (citing *Hughes v. Whitmer*, 714 F.2d 1407, 1419 (8th Cir. 1983)).

[6] *Id.* at 1406.

[7] *Id.*

[8] *Id.* at 1409 (citing *Hughes*, 714 F.2d at 1419).

restrictions of their rights at all times, but rather are limitations placed on their activities only when officers represent that they are too ill to report to duty."[9] "It is reasonable, after all, to expect that an employee too ill to work is too ill to be going about other matters outside the home, even beyond the hours of nine to five."[10] Importantly,

> [t]he sick leave regulations in no way limit appellants as to whom they may associate with in their homes when ill. Neither do the regulations restrict the frequency or duration of the visits appellants may have in their homes with family and friends while on sick leave. The prohibition on outside-the-home visits to family and friends while on sick leave is entirely reasonable and not unduly restrictive. Similarly, it is unquestionably rational for the [Department] to limit [Plaintiffs'] ability to travel when on sick leave.[11]

Plaintiffs also argue that the home restriction provisions are unconstitutional because they give government officials too much discretion to decide whether and when an ill or injured officer may leave his or her house.[12] We reject this argument as well. When a home confinement provision in a sick leave policy contains readily available and well-defined exceptions, the fact that the policy "leaves certain small decisions to the employer's discretion" will not render the policy unconstitutional.[13] SPD 301.06 contains an enumerated list of non-discretionary exceptions, so it passes constitutional muster.[14]

---

[9] *Id.*

[10] *Korenyi v. Dep't of Sanitation of the City of New York*, 699 F. Supp. 388, 393 (E.D.N.Y. 1988).

[11] *Crain*, 920 F.2d at 1409.

[12] *See Crudele v. City of New York Police Dep't*, No. 97 Civ. 6687(RCC), 2004 WL 1161174, at *3-4 (S.D.N.Y. May 24, 2004); *Uryevick v. Rozzi*, 751 F. Supp. 1064, 1068-71 (E.D.N.Y. 1990); *Voorhees v. Shull*, 686 F. Supp. 389, 394-95 (E.D.N.Y. 1987); *Phila. Lodge No. 5, Fraternal Order of Police v. City of Phila.*, 599 F. Supp. 254, 258-59 (E.D. Pa. 1984), *aff'd mem. sub nom.* 779 F.2d 43 (3d Cir. 1985).

[13] *Monahan v. City of New York Dep't of Corr.*, 10 F. Supp. 2d 420, 425 (S.D.N.Y. 1998).

[14] *See Voorhees*, 686 F. Supp. at 395 n.3.

No. 14-31161

Thus, we reject Plaintiffs' constitutional challenges to SPD 301.06's home confinement provisions.[15]

B.

SPD 301.06 also provides: "When a member is using sick leave, their supervisor or the Human Resources Officer may visit or contact the member to ascertain if the department can do anything to assist the member and verify information" regarding the officer's health status. According to Plaintiffs, this provision constitutes "home invasion" and an "unreasonable search and seizure" in violation of the Fourth Amendment. This claim is meritless, so the district court correctly dismissed it.[16]

---

[15] Plaintiffs urge us to follow the Seventh Circuit's decision in *Pienta v. Village of Schaumburg, Illinois*, 710 F.2d 1258 (7th Cir. 1983), which applied the strict scrutiny standard to strike down similar home confinement provisions in a police department's sick leave policy. We, like every other court to consider the issue, find *Pienta* "completely unpersuasive." *Monahan*, 10 F. Supp. 2d at 424 n.3. *Accord Crain*, 920 F.2d at 1408; *Hambsch v. Dep't of the Treasury*, 796 F.2d 430, 434 (Fed. Cir. 1986); *Abel v. City of Algona*, No. C07-956BHS, 2008 WL 4542428, at *10-11 (W.D. Wash. Oct. 8, 2008); *Crudele*, 2004 WL 1161174, at *2; *Uryevick*, 751 F. Supp. at 1068 n.2; *Voorhees*, 686 F. Supp. at 393-94; *Phila. Lodge*, 599 F. Supp. at 257-58. In any event, the sick leave policy at issue in *Pienta* was far more restrictive than the policy challenged here.

[16] *See Competello v. Labruno*, No. Civ.A. 02-664(DRD), 2005 WL 1637907, at *10, *12 (D.N.J. July 12, 2005) ("The department can also call or visit the officer's house to ensure that the officer is abiding by the restrictions. . . . Here, both the monitoring policy and the policy requiring that officers stay at home do further a substantial state interest in ensuring that police officers do not abuse their sick leave privileges."); *Korenyi*, 699 F. Supp. at 392, 396 ("Unannounced home visits to ensure compliance with the Department's rules and regulations are generally made daily. The employee signs a departmental form as proof that he was in fact at home when visited. Suspected violators or malingerers are subject to multiple daily visits. If an employee does not appear to be home when a visit occurs, a Department investigator will telephone. If no response is obtained, a message is left on the employee's door instructing him to call the Department and explain his absence. . . . Plaintiff's facial challenge to the Department sick-leave rules and regulations is dismissed in its entirety."); *Phila. Lodge*, 599 F. Supp. at 259 ("The Court has determined that the procedure by which the Fire Department visits the home of a firefighter on sick leave is constitutionally acceptable.").

No. 14-31161

C.

Plaintiffs also claim that SPD 301.06 violates the Equal Protection Clause of the United States Constitution because the City's police officers are subject to greater sick leave restrictions than the City's firefighters. This challenge is meritless. The City has a rational basis for treating police officers differently than firefighters.[17] Police officers, unlike firefighters, are tasked with apprehending potentially hostile suspects, and they are authorized to use deadly force if necessary. It is therefore rational for the City to take stronger measures to protect the physical and mental health of its police officers than it takes to protect its firefighters.[18]

D.

Plaintiffs also challenge the provisions of SPD 301.06 that authorize the Department to obtain medical information from ill or injured officers. According to Plaintiffs, requesting and obtaining this information constitutes an unlawful inquiry into the nature and severity of an officer's disability.

Section 12112(d)(4)(A) of the Americans with Disabilities Act ("ADA") provides:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

---

[17] *See A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 226 (5th Cir. 2009) ("[P]laintiffs' rights to equal protection have been violated only if the policy is not 'rationally related to a legitimate government purpose.'" (quoting *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989); *Lyng v. Int'l Union, UAW*, 485 U.S. 360, 370 (1988))).

[18] *Cf. Crain*, 920 F.2d at 1409 ("The police department, as a paramilitary organization, must be given considerably more latitude in its decisions regarding discipline and personnel regulations than the ordinary government employer." (citing *Hughes*, 714 F.2d at 1419)).

No. 14-31161

Thus, a prohibited medical examination or inquiry may constitute a form of employment discrimination under the ADA.[19]

Importantly, § 12112(d)(4)(A) is codified in Title I of the ADA. Plaintiffs cannot bring a cause of action directly under Title I because Plaintiffs have not satisfied that Title's exhaustion requirements. In an attempt to get around the exhaustion bar, Plaintiffs argue that they are actually pursuing medical inquiry claims under Title II of the ADA,[20] which forbids disability discrimination in the provision of public services,[21] and Section 504 of the Rehabilitation Act, which forbids "any program or activity receiving Federal financial assistance" from discriminating against persons solely on the basis of disability.[22] Plaintiffs argue that Title II and the Rehabilitation Act incorporate Title I's medical inquiry prohibition by reference without also incorporating Title I's exhaustion requirements.

1.

The district court correctly dismissed Plaintiffs' Title II claims. Unlike Title I of the ADA, Title II does not create a cause of action for employment discrimination.[23] An unlawful medical inquiry by a public employer constitutes

---

[19] *See* 42 U.S.C. § 12112(d)(1) ("The prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries.").

[20] *Id.* §§ 12131-65.

[21] *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011).

[22] 29 U.S.C. § 794.

[23] *See Brumfield v. City of Chicago*, 735 F.3d 619, 622-30 (7th Cir. 2013); *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 167-72 (2d Cir.), *cert. dismissed*, 133 S. Ct. 2823 (2013); *Elwell v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 693 F.3d 1303, 1305-14 (10th Cir. 2012); *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1171-84 (9th Cir.), *cert. denied*, 531 U.S. 1189 (2001).

Like every Circuit that has recently considered the question, we reject the Eleventh Circuit's contrary conclusion in *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 818, 820-25 (11th Cir. 1998).

No. 14-31161

a form of employment discrimination under the ADA.[24] Thus, a plaintiff may not pursue a medical inquiry claim under Title II.

2.

Plaintiffs' Rehabilitation Act claims fare slightly better. Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.[25]

Unlike Title II of the ADA, the Rehabilitation Act incorporates many of Title I's prohibitions on employment discrimination by reference,[26] including § 12112(d)(4)(A)'s medical inquiry prohibition.[27] Therefore, unlike Plaintiffs' Title II claims, Plaintiffs' Rehabilitation Act claims may proceed if their complaint properly states a claim under that statute.

---

We do not now decide whether a plaintiff may pursue an employment discrimination suit under Title II against an employer that is not covered by Title I, such as a public entity with fewer than fifteen employees. *See Mary Jo C.*, 707 F.3d at 171 n.12.

[24] 42 U.S.C. § 12112(d)(1) ("The prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries.").

[25] 29 U.S.C. § 794(a).

[26] *See id.* § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.").

[27] *E.g.*, *Lee v. City of Columbus, Ohio*, 636 F.3d 245, 252 (6th Cir. 2011).

No. 14-31161

3.

Defendants first argue that Plaintiffs lack the qualifications necessary to bring a claim under the Rehabilitation Act. For the following reasons, we disagree.

a.

Section 504 of the Rehabilitation Act only applies to (1) federal agencies and (2) entities receiving federal financial assistance.[28] "[T]o state a § 504 claim" under the Rehabilitation Act, "a plaintiff must allege that the specific program or activity with which he or she was involved receives or directly benefits from federal financial assistance."[29] "[A] plaintiff may not predicate a § 504 claim against a state actor on the mere fact that the state itself obtains federal money."[30]

Defendants argue that the Plaintiffs failed to allege in their complaint that the "specific program or activity" with which they are involved – namely, the police department – "receives or directly benefits from federal financial assistance." We disagree. The complaint alleges that "the City receives federal funds for the police department." The Department is a specific "program or activity" within the meaning of the Rehabilitation Act.[31]  The complaint is therefore not defective in this regard.

---

[28] *See* 29 U.S.C. § 794(a)-(b); *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426-27 (5th Cir. 1997).

[29] *Lightbourn*, 118 F.3d at 427 (citing *Brown v. Sibley*, 650 F.2d 760, 767-71 (5th Cir. Unit A 1981)).

[30] *Id.* (citing *Brown*, 650 F.2d at 767).

[31] *See* 29 U.S.C. § 794(b).

No. 14-31161

b.

Defendants also argue that the Rehabilitation Act requires Plaintiffs to exhaust their administrative remedies before filing suit. Again, we disagree. Although a plaintiff must exhaust his or her administrative remedies before pursuing a Rehabilitation Act claim against a federal *agency*, it need not do so before suing a federal *grantee*.[32] The Department is a federal grantee, not a federal agency, so the Rehabilitation Act's exhaustion requirements do not apply here.[33]

c.

Defendants also argue that, because Plaintiffs have not alleged that they are "disabled" as the ADA defines that term, they have no standing to pursue a medical inquiry claim under the Rehabilitation Act. We have previously declined to decide whether a plaintiff must be disabled to invoke the protections of § 12112(d)(4)(A).[34] We now join all our sister circuits who have considered the question and hold that a plaintiff need not assert that he or she has a disability to contest an allegedly improper medical inquiry or medical examination.[35]

---

[32] *Prewitt v. U.S. Postal Serv.*, 662 F.2d 311, 314 (5th Cir. Unit A 1981) (citing *Camenisch v. Univ. of Tex.*, 616 F.2d 127, 134-35 (5th Cir. 1980), *vacated on other grounds*, 451 U.S. 390 (1981)).

[33] The district court erred by reaching the contrary conclusion.

[34] *See Bachman v. Donahoe*, 460 F. App'x 383, 384 (5th Cir. 2012) (per curiam); *Fuzy v. S&B Eng'rs & Constructors, Ltd.*, 332 F.3d 301, 303 (5th Cir. 2003); *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 558-59 (5th Cir. 1998).

[35] *See Lee*, 636 F.3d at 252; *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1211-14 (11th Cir. 2010); *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (citing *Cossette v. Minn. Power & Light*, 188 F.3d 964, 969 (8th Cir. 1999)); *Conroy v. N.Y. State Dept of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003); *Fredenburg v. Contra Costa Cnty. Dep't of Health Servs.*, 172 F.3d 1176, 1181-82 (9th Cir. 1999); *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1228-29 (10th Cir. 1997); *Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 714-15 (E.D. La. 2013) (citations omitted).

No. 14-31161

4.

We therefore proceed to the merits of Plaintiffs' medical inquiry claims under the Rehabilitation Act. SPD 301.06 contains two provisions that require an officer on sick leave to divulge medical information to the Department: the "general diagnosis" provision, and the "SPD-3 Form" provision. Plaintiffs challenge both.

a.

SPD 301.06 provides that "[f]or every event that a member uses sick leave [he or she] shall furnish or verify" to his or her supervisor the "[n]ature of illness or injury." Thus, an officer who takes sick leave must provide the Department with a general diagnosis to explain why he or she was absent from work. Plaintiffs assert that the Rehabilitation Act prohibits employers from asking an absent employee about the medical nature of his or her absence and the condition being treated.

Crucially, to prevail on a Rehabilitation Act claim, the plaintiff must ultimately prove that the defendant discriminated against him or her *solely* on the basis of disability.[36] As a result, an inquiry into an employee's medical condition violates the Rehabilitation Act only if it is "intended to reveal or necessitates revealing a disability."[37] "Asking an employee returning to work to describe the 'nature' of his illness . . . is not necessarily a question about whether the employee is disabled."[38] Because an employer's request for a general diagnosis is neither intended to reveal nor necessitates revealing a disability, it does not violate the Rehabilitation Act.[39]

---

[36] *E.g.*, *Lee*, 636 F.3d at 255.
[37] *Id.* (citing 24 C.F.R. § 8.13(a)).
[38] *Id.* at 254-55.
[39] *See id.* at 255-57.

11

No. 14-31161

Plaintiffs emphasize that several courts have struck down similar general diagnosis provisions in sick leave policies under Title I of the ADA. These courts hold that any request for medical information that *may tend to reveal* a disability, including a request for a general diagnosis, is sufficient to trigger Title I's protections.[40] However, Title I does not contain the Rehabilitation Act's sole causation requirement.[41] As a result, a medical inquiry that violates Title I will not necessarily violate the Rehabilitation Act.[42] Even assuming without deciding that SPD 301.06's general diagnosis provision would violate Title I, it does not violate the Rehabilitation Act because it is neither "intended to reveal" nor "necessitates revealing a disability."[43]

Therefore, the district court properly dismissed Plaintiffs' challenge to the general diagnosis provision.[44]

b.

The SPD-3 Form requirement, which is the second medical inquiry provision at issue, is somewhat more intrusive. Although we uphold one aspect

---

[40] *See Conroy*, 333 F.3d at 95-102 ("We hold that requiring a general diagnosis is sufficient to trigger the protections of the ADA[.]"); *Munoz v. SSA*, Civil No. 10cv1003 MMA (NLS), 2012 U.S. Dist. LEXIS 59326, at *5-6 (S.D. Cal. Apr. 26, 2012) ("[A] requirement that an employee give his or her employer a general diagnosis to justify a request for sick leave is impermissible because it may tend to reveal a disability. . . . [A]n attendance policy, that on its face, allows supervisors to ask about the nature of a medical absence and the condition being treated, is prohibited because it could result in an 'impermissible disability-related inquiry.'" (quoting *EEOC v. Dilliard's*, No. 08cv1780-IED(PCL), 2012 U.S. Dist. LEXIS 16945, at *14-15 (S.D. Cal. Feb. 9, 2012))).

[41] *Lee*, 636 F.3d at 255.

[42] *See id.*

[43] *See id.* at 255-57.

[44] Although the district court erroneously dismissed this claim without prejudice on exhaustion grounds, we may affirm an order granting a motion to dismiss "on any basis supported by the record." *Asadi*, 720 F.3d at 622 (citing *Torch Liquidating Trust*, 561 F.3d at 384). On remand, the district court may wish to amend its judgment so that this claim is instead dismissed with prejudice.

of the requirement, we reverse and remand to allow Plaintiffs to pursue their challenge to other aspects of the SPD-3 Form provision.

First, "[f]or every undocumented sick leave event," the officer must complete the "Employee" section of an "SPD-3 Form." This requires the officer to certify:

> I hereby acknowledge that it is my responsibility to furnish the [D]epartment, or any of its representatives, any and all information, facts, and particulars requested in connection with my absence from work, and to permit them to examine all x-rays, records or documents regarding my physical condition or treatment. I authorize and request any and all of my physicians and hospitals to furnish all necessary information request [sic] by the [D]epartment[.]

Plaintiffs argue that this provision permits the Department to obtain any medical information that it desires, even if the information is not directly related to the officer's absence. We do not interpret the form so broadly. The officer need only furnish "information, facts, and particulars requested *in connection with [his or her] absence from work.*" Likewise, the form only authorizes the Department to obtain information from the officer's healthcare provider that is "necessary" to determine why the officer was absent. Thus, this section of the SPD-3 Form only permits the Department to determine why the officer missed work and confirm that the absence was justified. As explained above, the Rehabilitation Act does not forbid an employer from investigating the medical reason for an employee's absence, so this provision is neither "intended to reveal" nor "necessitates revealing" a disability.[45] The district court therefore properly dismissed this aspect of Plaintiffs' claim.

However, the SPD-3 Form also provides that, if the officer uses three or more days of undocumented sick leave in a single year, or if the officer uses

---

[45] *See Lee*, 636 F.3d at 255 (citing 24 C.F.R. § 8.13(a)).

documented sick leave, then the officer's healthcare provider must also furnish certain medical information about the officer on either the "Healthcare Provider" section of the SPD-3 Form or the healthcare provider's official letterhead. The provider must, among other things, "[s]tate if the [officer's] condition is chronic and whether intermittent absences related to the condition may be possible." This "chronic condition" provision is more troubling, as it may enable the Department to determine whether the officer has "a physical or mental impairment that substantially limits one or more major life activities."[46] In other words, although the Department may lawfully investigate why an officer missed work *in the past*, and request documentation to confirm that the officer's absence was justified, an investigation into the officer's *future* likelihood of missing work is more likely to reveal information about an officer's disability status under federal law.[47] Thus, Plaintiffs' facial challenge to the "chronic condition" provision states a *prima facie* claim under the Rehabilitation Act, because that provision may very well be intended to reveal or necessitate revealing a disability.

We must therefore reverse the district court's order to the extent it dismissed this claim. On remand, the City will have the burden to show that this aspect of the SPD-3 Form requirement is "job-related and consistent with business necessity."[48] To be sure, the City may very well be able to satisfy that standard at the summary judgment phase of the case. As a paramilitary organization charged with maintaining public safety, a police department

---

[46] *See* 42 U.S.C. § 12102(1)(A).

[47] Defendants emphasized at oral argument that the healthcare provider does not necessarily need to fill out an SPD-3 Form; it may instead furnish the information in a doctor's report on its official letterhead. That is irrelevant. As we read the SPD-3 Form requirement, the healthcare provider must provide the Department the same information about the officer either way, which may be intended to reveal or necessitate revealing a disability.

[48] *See* 42 U.S.C. § 12112(d)(4)(A).

must ensure that its officers are in peak physical and mental condition.[49] At the motion to dismiss stage, however, the Court must take Plaintiffs' well-pleaded allegations as true. Plaintiffs allege that the SPD-3 Form requirement is not consistent with business necessity. Business necessity is an affirmative defense, so it is generally inappropriate to dismiss a medical inquiry/examination claim at the 12(b)(6) stage on business necessity grounds.[50] We therefore reverse the district court's order to the limited extent that Plaintiffs challenge the SPD-3 Form requirement under the Rehabilitation Act.

However, Plaintiffs may not obtain compensatory damages if they ultimately prevail on their medical inquiry claim because none of the Plaintiffs allege that the SPD-3 Form requirement proximately caused them any tangible injury in fact.[51] We therefore affirm the district court's order to the extent it dismissed Plaintiffs' claim for damages under the Rehabilitation Act, and reverse and remand only to allow Plaintiffs to pursue their injunctive and declaratory claims.[52] In other words, Plaintiffs' Rehabilitation Act claim

---

[49] *Cf. Crain*, 920 F.2d at 1409.

[50] *See Franklin*, 936 F. Supp. 2d at 718 ("Thus, while it remains possible that the business necessity exception may ultimately apply in this case, the Court declines, at [the 12(b)(6)] stage, to dismiss Plaintiff's ADA claim under section 12112(d)(4)(A) on account of the business necessity exception.").

[51] *Cf. Armstrong*, 141 F.3d at 561-62 ("This Court has been unable to find any indication either in the text of the ADA or in its legislative history that a violation of the prohibition against . . . medical examinations and inquiries, in and of itself, was intended to give rise to damages liability. . . . Consequently, we hold that damages liability under section 12112(d)[] must be based on something more than a mere violation of that provision. There must be some cognizable injury in fact of which the violation is a legal and proximate cause for damages to arise[.]"); *Buchanan v. City of San Antonio*, 85 F.3d 196, 199-200 (5th Cir. 1996).

[52] We leave open the possibility that Plaintiffs may recover fees and costs if they successfully obtain declaratory or injunctive relief.

No. 14-31161

survives only to the limited extent that Plaintiffs seek to invalidate the "chronic condition" aspect of the SPD-3 Form requirement.[53]

E.

The remainder of Plaintiffs' facial challenges under federal law are either inadequately briefed or so patently meritless as to merit no discussion, so we affirm the district court's order to the extent it dismissed those claims.

III.

We turn now to Plaintiffs' as-applied challenges to SPD 301.06 under federal law.

A.

Plaintiff-Appellant Jessica Walker ("Walker") alleges that Defendants unlawfully disclosed her medical information of the Rehabilitation Act.[54]

Under 42 U.S.C. § 12112(d) of the ADA, if an employer performs a medical inquiry or examination, the employer must treat the medical information it obtains as a result of that inquiry as a "confidential medical record."[55] The Rehabilitation Act incorporates § 12112(d) by reference.[56]

---

[53] On remand, the district court need not allow Plaintiffs to amend their claim to add allegations that could support an award of compensatory damages. The district court afforded Plaintiffs several opportunities to cure the numerous defects in their pleadings. Of course, the district court may exercise its discretion to permit further amendment if it prefers.

[54] Walker also pursues a similar medical disclosure claim under Title II of the ADA, but, as described above, Title II does not incorporate 42 U.S.C. § 12112(d).

[55] *See* 42 U.S.C. § 12112(d)(3)(B), (d)(4)(B)-(C); *EEOC v. Thrivent Fin. for Lutherans*, 700 F.3d 1044, 1046-52 (7th Cir. 2012).

There are exceptions to that general rule, but none are relevant here. *See* 42 U.S.C. § 12112(d)(3)(B)(i)-(iii).

[56] *See Lee*, 636 F.3d at 252 (citations omitted); *Doe v. United States Postal Serv.*, 317 F.3d 339, 340 (D.C. Cir. 2003) ("*USPS*") (citations omitted).

No. 14-31161

Importantly, § 12112(d) prohibits an employer from disclosing an employee's medical information *only if* the employer first acquired the information *as a result of a medical inquiry or examination* as those terms are defined in the ADA.[57] If the employee voluntarily divulges the medical information to the employer without the employer specifically demanding the information first, or if the employer otherwise obtains the medical information outside the context of a medical inquiry or examination, then the employer has no duty under § 12112(d) to keep that information confidential.[58] Thus, to survive a Rule 12(b)(6) motion, the complaint must affirmatively allege that the defendant obtained the disclosed medical information pursuant to a medical examination or inquiry.[59]

Walker does not allege that Defendants disclosed medical information that they first acquired pursuant to an employer-initiated medical inquiry or examination, rather than by some other means. She does not specify which

---

[57] *Thrivent Fin. for Lutherans*, 700 F.3d at 1046-52; *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1046-48 (10th Cir. 2011); *USPS*, 317 F.3d at 343-45; *Cash v. Smith*, 231 F.3d 1301, 1303, 1307-08 (11th Cir. 2000).

The ADA also provides that the employer must also keep medical information obtained pursuant to a voluntary medical examination conducted as part of an employee health program confidential, but nothing in the complaint indicates that this case implicates that provision of the ADA. *See*, *e.g.*, *Fisher v. Harvey*, No. 1:05-CV-102, 2006 WL 2370207, at *4 (E.D. Tenn. Aug. 14, 2006).

[58] *Thrivent Fin. for Lutherans*, 700 F.3d at 1046-52; *C.R. England, Inc.*, 644 F.3d at 1046-48; *Cash*, 231 F.3d at 1303, 1307-08.

[59] *See Franklin*, 936 F. Supp. 2d at 711-12 ("Plaintiff merely alleges that Johnson 'provided medical information' to Dr. Klein, without alleging any facts indicating that Johnson obtained the medical information in question from an entrance exam or disability-related inquiry. . . . Thus, the Court finds that Plaintiff has failed to state a claim for disclosure of confidential medical information against the City under 42 U.S.C. § 12112(d)."); *Dean v. City of New Orleans*, Civil Action No. 11-2209, 2012 WL 2564954, at *21 (E.D. La. July 2, 2012), *aff'd*, 544 F. App'x 353 (5th Cir. 2013) ("[The plaintiff] has not alleged that any medical information that the Police Department may have released to SBA was obtained through an entrance examination or a disability-related inquiry. In the absence of any such factual allegations, he fails to state a claim upon which relief can be granted under Section § [sic] 12112(d)."); *Rohan v. Networks Presentation LLC*, 175 F. Supp. 2d 806, 814 (D. Md. 2001).

medical conditions Defendants disclosed or how Defendants first found out about them. Although Walker does allege that Defendants required her to submit an SPD-3 Form, she does not describe the contents of that SPD-3 Form or specify whether Defendants first learned of the disclosed medical conditions as a result of that SPD-3 Form. Therefore, we affirm the district court's order dismissing Walker's medical disclosure claim pursuant to Rule 12(b)(6).[60]

## B.

The remainder of Plaintiffs' as-applied claims under federal law are either inadequately briefed or too unspecific to state a claim upon which relief can be granted. We therefore affirm the district court's order to the extent it dismissed them.

## IV.

Plaintiffs have also sued several of their supervisors in their individual and official capacities. Essentially, Plaintiffs argue that SPD 301.06 violates their constitutional and statutory rights, so the individual Defendants must be held liable for drafting, adopting, implementing, and enforcing SPD 301.06.

The individual Defendants have asserted the defense of qualified immunity. They are entitled to it. To avoid dismissal on qualified immunity grounds, a plaintiff must show that (1) the defendant violated a federal

---

[60] The district court dismissed this claim without prejudice on exhaustion grounds. However, as explained above, the Rehabilitation Act's exhaustion requirements do not apply here. Nevertheless, we may affirm an order granting a motion to dismiss "on any basis supported by the record." *Asadi*, 720 F.3d at 622 (citing *Torch Liquidating Trust*, 561 F.3d at 384). On remand, the district court may wish to modify its judgment so that this claim is dismissed with prejudice.

On remand, the district court need not grant Walker a chance to amend her complaint to add the missing allegations. The district court has already afforded Plaintiffs multiple opportunities to cure the numerous defects in their pleadings. Of course, the district court may exercise its discretion to permit further amendment if it so desires.

No. 14-31161

statutory or constitutional right; and (2) the right in question was "clearly established" at the time of the violation.[61] As explained above, the overwhelming majority of Plaintiffs' statutory and constitutional challenges to SPD 301.06 are meritless. Because the policy does not violate Plaintiffs' rights, the individual Defendants cannot be liable for implementing it. The only claim with any potential merit is Plaintiffs' medical inquiry challenge to the SPD-3 Form provision. However, the law regarding whether and when the doctrine of business necessity allows a police department to gather medical information from its officers is far from clearly established.[62] Thus, the district court correctly dismissed all of Plaintiffs' claims against the individual Defendants.

V.

Plaintiffs also raise miscellaneous state law claims against Defendants. Because the district court dismissed all of Plaintiffs' federal claims, it declined to exercise supplemental jurisdiction over Plaintiffs' state law claims, and accordingly dismissed those claims without prejudice.[63] However, we have ruled that the district court erroneously dismissed one of Plaintiffs' federal claims. We therefore remand to allow the district court to decide in the first instance whether to dismiss Plaintiffs' state law claims under Rule 12(b)(6).

VI.

We VACATE the district court's order to the extent that it dismissed Plaintiffs' Rehabilitation Act challenge to the portion of the SPD-3 Form that requests information regarding whether the officer has a "chronic condition."

---

[61] *Tolan v. Cotton*, 134 S. Ct. 1861, 1865-66 (2014) (citations omitted).

[62] *Compare Conroy*, 333 F.3d at 95-102 *with Lee*, 636 F.3d at 254-55.

[63] *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").

No. 14-31161

We REMAND to the district court to allow Plaintiffs to pursue, at most, injunctive and declaratory relief on that claim.[64]

On remand, the district court may also reconsider the portion of its order dismissing Plaintiffs' state law claims.

We AFFIRM the district court's order in all other respects.

AFFIRMED in part, VACATED in part, and REMANDED.

---

[64] Again, we leave open the possibility that Plaintiffs may recover fees and costs if they ultimately prevail on their Rehabilitation Act claim.