# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-60355

United States Court of Appeals
Fifth Circuit

**FILED**

August 3, 2018

Lyle W. Cayce
Clerk

CHRISTOPHER C. DIGGS,

Plaintiff - Appellant

v.

THE BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:15-CV-186

Before HIGGINBOTHAM, SOUTHWICK, and COSTA, Circuit Judges.

PER CURIAM:*

Christopher Diggs brought suit against his employer, the Burlington Northern and Santa Fe Railway Company, claiming discrimination under Title VII and the Americans with Disabilities Act. Granting summary judgment, the district court concluded that the company offered a legitimate, non-discriminatory reason for the adverse employment action. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60355

FACTUAL AND PROCEDURAL BACKGROUND

Burlington Northern and Santa Fe Railway Company ("BNSF") hired Christopher Diggs in 1992 as a brakeman. Later, Diggs became a conductor. In 2009, Diggs had to take leave from work because of foot problems. During Diggs's absence, he was also diagnosed with myositis and diabetes. Diggs also had surgery on his foot while on leave. After this surgery, Diggs's physician recommended that he take a sedentary job because his current job required long periods of standing. BNSF notified Diggs that he could request vocational counseling, additional training, and assistance in job placement from BNSF. During Diggs's absence, BNSF continued to offer Diggs opportunities to apply for other positions within the company. Diggs was absent from work for five years until he asked to return in 2014. In July 2014, Diggs's podiatrist, Dr. Preston Boles, stated that Diggs would be able to return in August. Similarly, that same month, Diggs's rheumatologist, Dr. George Housley, released Diggs to work in August 2014 "on a trial basis" with no restrictions.

Before allowing Diggs to return to work, BNSF notified Diggs that he would need a recommendation from the medical department regarding his fitness for work. BNSF has a "standard practice" of "requir[ing] employees who have been off work for more than a year to complete a medical questionnaire when they seek to return to work from vocational rehabilitation status." Then, the medical director's office "routinely follow[s] up with the employee to gather relevant medical records and information about the conditions or issues that he or she reported in that questionnaire." This information enables the medical director to make decisions about the employee's ability to return to work. In Diggs's case, Dr. Gillis asked for more information regarding his foot injury, myositis, and diabetes.

In October 2014, the physician who treated Diggs's diabetes submitted the diabetic review form. In November, his rheumatologist submitted

2

documentation regarding his myositis. Diggs's podiatrist also submitted documentation in November. In December, BNSF notified Diggs that his responses were incomplete and did not fully address the concerns of the company. Diggs responded 11 days later, providing additional information he had obtained from his physicians. On January 2, 2015, BNSF notified Diggs that the information was still insufficient for him to return to work.

At this point, Diggs's union sent a letter to BNSF, requesting a tripartite medical review of the company's decision because BNSF had continued to withhold him from service. Such a review would allow Diggs's doctor, a BNSF doctor, and a neutral third party to make an evaluation. After making this request but before BNSF responded, Diggs filed his charge with the Equal Employment Opportunity Commission on February 5, 2015. At the end of February, BNSF denied his request for tripartite medical review because it had not made a final determination about his fitness for service. In April, BNSF again notified Diggs that he still had not fully complied with the company's requests.

In November 2015, Diggs filed suit against BNSF in the Northern District of Mississippi, claiming discrimination on the basis of race in violation of Title VII and disability in violation of the Americans with Disability Act ("ADA").[1] In February 2016, BNSF wrote to Diggs, notifying him that because he had not responded to the April requests, his medical leave was about to expire and offering to extend the leave. Beginning in March, Diggs's attorney wrote to BNSF providing some, but not all, of the information requested. Each time BNSF reminded Diggs what it needed and provided Diggs another opportunity to submit the necessary documents. After these exchanges, BNSF

---

[1] The district court also granted summary judgment to BNSF on Diggs's Title VII claim, and Diggs has abandoned any argument on that issue on appeal.

released Diggs for work in September.  In April 2017, the district court granted BNSF's motion for summary judgment.  Diggs timely appealed.

## DISCUSSION

"This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court."  *EEOC v. WC&M Enter., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A genuine dispute of material fact exists where there is sufficient evidence for a reasonable jury to find for the non-movant.  *See EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).  The court must view facts and evidence in a light most favorable to the non-movant and must draw reasonable inferences in favor of the non-movant.  *See id.*

A plaintiff alleging disability discrimination can either provide direct evidence of the discrimination or rely on the *McDonnell-Douglas* burden-shifting framework.  *Id.* at 694 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)).  Both parties agree here that Diggs is proceeding under *McDonnell Douglas*.  Under the *McDonnell-Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination.  *Id.*

A *prima facie* case under the ADA requires: (1) that the plaintiff has a disability; (2) that he was qualified for the job; and (3) that the employer's adverse employment decision was a result of his disability.  *Id.* at 695.  Then, the employer must articulate a legitimate, non-discriminatory reason for its action.  *Id.*  If the employer produces a legitimate, non-discriminatory reason, then the burden shifts to the employee to show that either the reason is pretextual or, if that reason is legitimate, that the employee's disability was a

substantial motivating factor in the decision. *Id.* at 702. The parties' arguments on appeal center on the causation/nexus element.

## I.     *Return-to-work medical inquiries*

As a preliminary matter, we discuss whether BNSF's inquiries were appropriate under the ADA. Although Diggs failed to raise the propriety of the requests before the district court or in his opening brief, he argues in his reply brief that 42 U.S.C. § 12112(d)(4) does not permit employers to require medical examinations or ask an individual disability-related questions unless job-related and consistent with business necessity.

Diggs cites a case from this circuit where we held that an employer's sick-leave policy established a *prima facie* claim under the Rehabilitation Act. *See Taylor v. City of Shreveport*, 798 F.3d 276, 286 (5th Cir. 2015). There, the policy provided that an employee using more than three sick days in a year must answer whether that condition is chronic and whether more related absences were possible. *Id.* We held that because the employee claimed that the inquiry violated the Act and was not consistent with business necessity, the claim should have survived the motion to dismiss. *Id.*

The statute is clear that an employer is permitted to ask some disability-related questions. *See* 42 U.S.C. § 12112(d)(4). Generally, there must be a reasonable concern about the employee's ability to perform essential job functions or that the employee will pose a direct threat because of a medical condition. EQUAL EMPLOYMENT OPPORTUNITY COMM'N, ENFORCEMENT GUIDANCE: DISABILITY-RELATED INQUIRIES AND MEDICAL EXAMINATIONS OF EMPLOYEES UNDER THE AMERICANS WITH DISABILITIES ACT (ADA) (2000), 2000 WL 33407181, at *13. Typically, these medical inquiries are limited to the medical conditions that prompted the medical leave. *Id.*

Although we conclude that the ADA permits medical inquiries upon an employee's request to return to work, we do not define the details of a permissible inquiry because Diggs did not raise this issue until his reply brief. The issue has been waived.

## II.    *Pretext*

We turn to Diggs's primary argument that a reasonable jury could have found that the repeated, shifting requests from BNSF that Diggs repeatedly attempted to comply with were a means to allow BNSF to refuse to allow Diggs to return to work on the basis of his disability.  The district court held that Diggs had not proven causation as an element of the *prima facie* case.  Further, even if he had, BNSF had offered a legitimate, non-discriminatory reason and Diggs had not shown that reason was pretextual.  For purposes of this appeal, we assume that Diggs did establish a *prima facie* case and examine whether Diggs showed that BNSF's non-discriminatory reason was a pretext.

BNSF's legitimate, non-discriminatory reason was its requirement that "employees on leave for longer than one year were required to undergo rigorous medical analysis to ensure a safe return, and employees with diabetes were required to fill out a specific medical status form."  The district court held that BNSF satisfied its burden and that Diggs did not "put forth evidence to create a genuine issue of material fact as to Defendant's discriminatory motive." Diggs needed to create a fact issue, the district court concluded, that he timely submitted the requested information; instead, Diggs argued the request was not justified.

On appeal, Diggs argues that a jury could find "the continual, duplicative requests were simply a pretext for discrimination."  In response, BNSF argues that "[a]t no time did Diggs ever provide all of the information Dr. Gillis requested and then find himself met with further requests."  BNSF further

contends that questioning the wisdom of an employer's decision is not sufficient to show pretext.

"At summary judgment, '[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive.'" *LHC Grp.,* 773 F.3d at 702 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

We agree with BNSF that an employee's refusal to comply with ADA-permitted inquiries can provide the employer with a legitimate, non-discriminatory reason to take an adverse employment decision against an employee. In an unpublished opinion with which we agree, the court found a company's explanation persuasive that "it placed [the employee] Jefferson on inactive status because of his repeated failure to comply with requests that he update his Work Status Report with recommendations from an approved physician." *See Jefferson v. MillerCoors, LLC*, 440 F. App'x 326, 330-31 (5th Cir. 2011). Though there was information from an unapproved physician stating that the Jefferson was unable to perform his job, the employer made "repeated efforts to determine precisely what Jefferson's restrictions were, and Jefferson did not comply." *Id.* at 330. Because Jefferson did not submit any evidence to demonstrate that the company's reason was a pretext, we affirmed the grant of summary judgment. *Id.* at 331.

Diggs distinguishes *MillerCoors* by arguing that there the compliance was uncontested, but here there is a dispute. According to Diggs, "he provided medical reports from all of his physicians, not only from the physician who treated him for his foot injury, for which he took disability leave, but also from all of his physicians with information about his medical condition."

Regardless of possible distinctions, it is undisputed that BNSF had general procedures in place for employees who wanted to return to work after

an extended medical leave of absence. An employee had to comply with these procedures in order to return to work. There is no evidence that the company would create new information demands after Diggs complied with previous ones. There is no evidence that the policy was applied differently as to Diggs, such as his being made to provide more information than were others. The only evidence is that Diggs was unable to return to work until he submitted all of the requested information. That failure is what prevented him from returning to his employment. This is true even considering his release for work from two of his physicians. Although Diggs claims BNSF's requests were a pretext, BNSF repeatedly provided Diggs with additional opportunities to comply rather than turning him away outright. Even more compelling is that when Diggs finally did fully comply with BNSF's requests, BNSF promptly approved his request to return to work.

Failure to comply with such inquiries provides employers with a legitimate, non-discriminatory reason for taking an adverse employment action. Those requests may be pretextual, but Diggs did not carry his burden to offer evidence to create a fact question of that.

AFFIRMED.